**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No. 13-453-SLR-SRF |
| v. | ) ) | JURY TRIAL DEMANDED |
| TOSHIBA CORPORATION, TOSHIBA AMERICA, INC., TOSHIBA AMERICA ELECTRONIC COMPONENTS, INC., and TOSHIBA AMERICA INFORMATION SYSTEMS, INC., | ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| TOSHIBA CORPORATION and TOSHIBA AMERICA ELECTRONIC COMPONENTS, INC., | ) ) ) ) | |
| Counterclaim-Plaintiffs, v. | ) ) ) | |
| INTELLECTUAL VENTURES I LLC, INTELLECTUAL VENTURES II LLC, INTELLECTUAL VENTURES MANAGEMENT, LLC, INVENTION INVESTMENT FUND I, L.P., and INVENTION INVESTMENT FUND II, LLC, | ) ) ) ) ) ) ) | |
| Counterclaim-Defendants. | ) ) | |

**DEFENDANTS AND COUNTER-CLAIMANTS TOSHIBA CORPORATION, TOSHIBA AMERICA, INC., TOSHIBA AMERICA ELECTRONIC COMPONENTS, INC. AND TOSHIBA AMERICA INFORMATION SYSTEMS, INC.'S OPPOSITION TO PLAINTIFFS' AND COUNTERCLAIM-DEFENDANTS' MOTION TO STAY PATENT MISUSE AND ANTITRUST CLAIMS AND DEFENSES**

Dated: November 20, 2014

**Of Counsel**:

Mark D. Fowler (*Pro Hac Vice*)
Alan Limbach (*Pro Hac Vice*)
Timothy Lohse (*Pro Hac Vice*)
Brent K. Yamashita (Pro Hac Vice)
Aaron Wainscoat (*Pro Hac Vice*)
Carrie L. Williamson (*Pro Hac Vice*)
Saori Kaji (*Pro Hac Vice*)
Katherine Cheung (*Pro Hac Vice*)
**DLA PIPER LLP (US)**
2000 University Avenue
East Palo Alto, CA  94303-2215
Telephone:   (650) 833-2048
Facsimile:   (650) 687-1138
mark.fowler@dlapiper.com
alan.limbach@dlapiper.com
timothy.lohse@dlapiper.com
brent.yamashita@dlapiper.com
aaron.wainscoat@dlapiper.com
carrie.williamson@dlapiper.com
saori.kaji@dlapiper.com
katherine.cheung@dlapiper.com

Gerald T. Sekimura (*Pro Hac Vice*)
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA  94105-2933
Telephone:   (415) 836.2576
Facsimile:   (415) 659.7476
gerald.sekimura@dlapiper.com

Brian Erickson (*Pro Hac Vice*)
**DLA PIPER LLP (US)**
401 Congress Avenue
Suite 2500
Austin, TX 78701-3799
Telephone:   (512) 457.7059
Facsimile:   (512) 721.2263
brian.erickson@dlapiper.com

**DLA PIPER LLP (US)**

  */s/ Denise S. Kraft*
Denise S. Kraft (Bar No. 2778)
Brian A. Biggs (Bar No. 5591)
1201 North Market Street, Suite 2100
Wilmington, DE  19801-3046
Telephone:   (302) 468-5700
Facsimile:   (302) 394-2341
denise.kraft@dlapiper.com
brian.biggs@dlapiper.com

*Attorneys for Defendants Toshiba
Corporation, Toshiba America, Inc., Toshiba
America Electronic Components, Inc. and
Toshiba America Information Systems, Inc.*

Kevin Hamilton *(Pro Hac Vice)*
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Telephone:   (619) 699.2634
Facsimile:    (619) 764.6633
kevin.hamilton@dlapiper.com

Patrick Park *(Pro Hac Vice)*
**DLA PIPER LLP (US)**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA 90067-4704
Telephone:   (310) 595.3113
Facsimile:    (310) 595.3413
patrick.park@dlapiper.com

Daniel M. Wall *(Pro Hac Vice)*
Hanno F. Kaiser *(Pro Hac Vice)*
Sadik Huseny *(Pro Hac Vice)*
Alan Devlin *(Pro Hac Vice)*
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone:   (415) 391-0600
Facsimile:    (415) 395-8095
dan.wall@lw.com
hanno.kaiser@lw.com
sadik.huseny@lw.com
alan.devlin@lw.com

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS .............................................3

SUMMARY OF ARGUMENT ..............................................................................4

ARGUMENT ..........................................................................................................4

I.   LEGAL STANDARD ..................................................................................4

II.  STAYING TOSHIBA'S PATENT MISUSE DEFENSE AND ANTITRUST COUNTERCLAIMS
     WILL NOT SIMPLIFY THE ISSUES IN THIS LITIGATION—BUT ALLOWING THEM TO
     PROCEED MAY IN FACT DO SO ........................................................................5

     A.   Staying Toshiba's patent misuse defense will not  simplify the issues in
          the case but instead undermine potential simplification ...........................5

     B.   Staying Toshiba's antitrust counterclaims will not simplify the issues in
          the  case but instead undermine potential simplification ...........................7

          1.   Toshiba's conspiracy claim cannot be "eliminated" or "narrowed" by
               the patent action.............................................................................7

          2.   Toshiba's unlawful asset acquisition claim cannot be "eliminated" or
               "narrowed" by the patent action .....................................................8

          3.   Toshiba's monopolization claims cannot be "eliminated" or
               "narrowed" by the patent action .....................................................9

     C.   IV's other arguments for simplification have no merit........................11

          1.   IV's argument that there is "minimal evidentiary overlap" is
               misplaced and speaks only to issues of severance ........................11

          2.   The Court should not grant this extensive stay based on an appeal in a
               different case in a different circuit .............................................13

III. IV SEEKS AN EXTENSIVE AND INDEFINITE DELAY IN ORDER TO OBTAIN TACTICAL
     ADVANTAGE AND PREJUDICE TOSHIBA ............................................................13

     A.   IV does not and cannot "demonstrate a clear case of hardship or  inequity"
          requiring a stay..................................................................................14

     B.   IV's actions in violation of the Federal Rules and Rules of this Court
          illustrate its maneuvering to obtain tactical advantage .........................15

C.      Granting the motion to stay would provide IV with a clear tactical advantage and unduly prejudice Toshiba.............................................................16

D.      IV's conclusory assertions that Toshiba will not suffer prejudice by the proposed extensive and indefinite stay are makeweight........................................19

IV.    THE EARLY STAGE OF THIS LITIGATION DOES NOT JUSTIFY A STAY ..............................20

CONCLUSION.........................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Apotex, Inc. v. Senju Pharm. Co.*,
  921 F. Supp. 2d 308 (D. Del. 2013)..........................................................................4, 13, 17

*Bechtel Corp. v. Laborers' Int'l Union*,
  544 F.2d 1207 (3d Cir. 1976)...........................................................................................5

*Belden Techs. Inc. v. Superior Essex Comm'cns*,
  No. 08-63-SLR, 2010 U.S. Dist. LEXIS 90960 (D. Del. Sept. 2, 2010) ................................17

*Benefit Funding Sys. LLC, v. Advance Am, Cash Advance Ctrs., Inc.*,
  No. 12-801-LPS, 2013 U.S. Dist. LEXIS 91057 (D. Del. June 28, 2013) ............................19

*Berlenbach v. Anderson & Thompson Ski Co.*,
  329 F.2d 782 (9th Cir. 1964) ...........................................................................................6

*Cost Bros. Inc. v. Travelers Indemnity Co.*,
  760 F.2d 58 (3d Cir. 1985)..............................................................................................4

*Debuit v. Harwell Enters.*,
  336 F. Supp. 1184 (W.D.N.C. 1971) ................................................................................7

*Dentsply Int'l, Inc. v. New Tech. Co.*,
  No. 96-272 MMS, 1996 U.S. Dist. LEXIS 19846 (D. Del. Dec. 19, 1996) ...........................12

*Donnelly Corp. v. Reitter & Schefenacker USA Ltd. P'ship*,
  No. 1:00-CV-751, 2002 U.S. Dist. LEXIS 15205 (W.D. Mich. Aug. 13, 2002)...............12, 18

*Ecrix Corp. v. Exabyte Corp.*,
  191 F.R.D. 611 (D. Colo. 2000) .................................................................................12, 13

*Eurand, Inc. v. Mylan Pharms., Inc.*,
  No. 08-889-SLR, 2009 WL 3172197 (D. Del. Oct. 1, 2009) ...............................................11

*FTC v. Actavis, Inc.*,
  133 S. Ct. 2223 (2013)....................................................................................................8

*Gold v. Johns–Manville Sales Corp.*,
  723 F.2d 1068 (3d Cir. 1983)...............................................................................5, 14, 16

*Ill. Tool Works Inc. v. Indep. Ink, Inc.*,
  547 U.S. 28 (2006).....................................................................................................6, 7

*ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*,
    No. 12-054-GMS-MPT, 2012 U.S. Dist. LEXIS 163234 (D. Del. Nov. 15,
    2012) ................................................................................................................5, 14

*Intellectual Ventures I LLC v. Symantec Corp.*,
    No. 13-440- LPS, D.I. 76 (D. Del. Sept. 24, 2014) ...............................................9

*Intellectual Ventures I LLC v. Capital One Financial Corp.*,
    Appeal Nos. 14-1506, 14-1515 (4th Cir. Jan. 15, 2014)......................................13

*Kobe, Inc. v. Dempsey Pump Co.*,
    198 F.2d 416 (10th Cir. 1952) ...........................................................................8, 9

*Krampe v. Ideal Indus., Inc.*,
    347 F. Supp. 1384 (N.D. Ill. 1972) .......................................................................7

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)...........................................................................................5, 17

*Masimo Corp. v. Philips Elecs. N. Am. Corp.*,
    No. 09-80-JJF-MPT, 2010 U.S. Dist. LEXIS 23057 (D. Del. Mar. 11, 2010) .......10

*Morton Salt Co. v. G. S. Suppiger Co.*,
    314 U.S. 488 (1942).............................................................................................6, 7

*In re Packard*,
    751 F.3d 1307 (Fed. Cir. 2014)..............................................................................17

*Peschke Map Tech., LLC v. J.J. Gumberg Co.*,
    No. 12-1525, 2014 U.S. Dist. LEXIS 57113 (D. Del. Apr. 24, 2014)....................4

*Pragmatus Telecom, LLC v. Adv. Store Co., Inc.*,
    No. 12-088-RGA, 2012 U.S. Dist. LEXIS 95036 (D. Del. July 10, 2012) ............20

*Princo Corp. v. Int'l Trade Comm'n*,
    616 F.3d 1318 (Fed. Cir. 2010).............................................................................5, 6

*Procter & Gamble Co. v. CAO Grp., Inc.*,
    No. 1:13-cv-337, 2013 U.S. Dist. LEXIS 163831 (S.D. Ohio Nov. 18, 2013) .......18

*SCM Corp. v. Xerox Corp.*,
    645 F.2d 1195 (2d Cir. 1981).................................................................................8

*SenoRx, Inc. v. Hologic, Inc.*,
    No. 12-173-LPS-CJB, 2013 U.S. Dist. LEXIS 8044 (D. Del. Jan. 11, 2013) .........15

*Senza-Gel Corp. v. Seiffhart*,
    803 F.2d 661 (Fed. Cir. 1986).................................................................................6

*SoftView LLC v. Apple Inc.*,
    No. 10-389-LPS, 2012 U.S. Dist. LEXIS 104677 (D. Del. July 26, 2012) ............................19

*Spectrum Sports v. McQuillan*,
    506 U.S. 447 (1993) ............................................................................................................9

*Teva Pharms. USA, Inc., v. Abbott Labs.*,
    252 F.R.D. 213 (D. Del. 2008) .........................................................................................7

*United States v. Grinnell Corp.*,
    384 U.S. 563 (1966) ............................................................................................................9

*Xilinx, Inc. v. Invention Inv. Fund I LP*,
    No. 11-CV-00671, D.I. 129 (N.D. Cal. Nov. 30, 2012) ......................................................20

## STATUTES & RULES

15 U.S.C. § 1 .................................................................................................................2, 7

15 U.S.C. § 2 ........................................................................................................................9

15 U.S.C. § 18 ..................................................................................................................2, 8

Fed. R. Civ. P. 8 ................................................................................................................15

Fed. R. Civ. P. 12 ..............................................................................................................15

Fed. R. Civ. P. 42 ......................................................................................................1, 15, 16

D. Del. L. R. 7.1.1 ..............................................................................................................16

## INTRODUCTION

Intellectual Ventures ("IV") seeks to stay Toshiba's patent misuse defense and antitrust counterclaims for an indefinite period of time, but likely 4 years or more, "until after resolution of [IV's] patent claims, at which time [IV] will answer, move, or otherwise respond to Toshiba's amended pleadings." D.I. 57 at 9. It does so on the thinnest grounds, relying largely on the assertion that such extensive stays of antitrust issues are "common" and "frequent" in this district and should apparently be granted as a matter of course, but not once explaining to the Court what Toshiba's misuse defense and counterclaims actually entail, or describing how the patent action can have any dispositive or narrowing effect on the defense or counterclaims as actually alleged (it does not). The motion is shrouded in a veneer of expectation: a sense that IV's patent claims have special status, and that Toshiba's patent misuse defense and antitrust counterclaims are rote and dependent "stepchild" claims that should lie dormant for years—until after the trial on IV's first two patents in January 2017, after any follow-on trial(s) on additional patents, after any award of damages, and after all post-trial briefing and appeals have run their course. IV is mistaken, and should not be allowed to unduly prejudice Toshiba and gain tactical advantage by attempting to wrap its motion in "judicial economy" clothing that simply does not fit.

At the threshold, IV's motion conflates two distinct questions: (i) whether Toshiba's patent misuse defense and antitrust counterclaims should be *bifurcated* for trial purposes from the patent claims, pursuant to Federal Rule of Civil Procedure 42(b), and (ii) whether the defense and counterclaims should be *stayed*. But IV did not trouble itself to file a Rule 42 motion. Instead, it simply *assumes* the Court will order bifurcation, and borrows the principles used to sometimes justify separate trials for antitrust issues (jury distraction, jury bias, trial complexity, and so on) to argue for the far more extensive mechanism of a stay. This is improper. In light of the Court's statements at the October 15, 2014 status conference, Toshiba understands that the Court generally prefers to bifurcate for trial complex patent and complex antitrust claims, and

1

accordingly may want to set separate and appropriate scheduling for the antitrust issues.  But IV cannot use trial/jury complexity issues to argue for a far broader and unjustified indefinite stay.

On substance, IV fails to show that any of the relevant factors counsel for a stay.  It is not true that resolution of the patent claims will (or even possibly will) "eliminate," "narrow," or "simplify" the antitrust issues in this case.  That is sometimes true when the misuse and antitrust claims relate solely to the patents-in-suit, but Toshiba's misuse defense and antitrust counterclaims are fundamentally different.  Toshiba alleges an illegal patent aggregation scheme that certainly involves misuse of the patents-in-suit (to, among other things, unlawfully force Toshiba to pay for many other irrelevant and invalid patents), but is principally about IV's unlawful aggregation of over 3,700 patents, only 10 of which are in this suit, and its unlawful conspiracy with other patent assertion entities.  IV does not address how Toshiba's Sherman Act Section 1 (conspiracy in restraint of trade) or Clayton Act Section 7 (unlawful asset acquisition) claims relate to the patent claims at all (they do not), and their assertion that resolution of the "merits" of the patents-in-suit will eliminate or narrow Toshiba's monopolization claims is simply wrong.  In fact, Toshiba's contention is that IV's scheme is anticompetitive <u>precisely because</u> IV is aggregating vast pools of patents and attacking Toshiba "regardless of merit."  D.I. 43 at 44, ¶ 62.

Moreover, IV seeks to gain a clear tactical advantage and unduly prejudice Toshiba with a proposed stay that, by its length and indefiniteness alone, is improper.  IV's self-serving statement that it "would not gain any tactical advantage" from such a stay is obviously not true: a stay of such magnitude will allow IV to be the sole party on offense for years and to permanently undermine the amount and quality of discovery Toshiba will ever be able to get, all while unduly damaging Toshiba's business.  And IV fails to even argue that denial of the stay would subject it to "a clear case of hardship or inequity," as required under Third Circuit law.  IV's additional

arguments for a "stay" are either makeweight or, again, relate to simplifying issues for the jury at trial—which if anything are appropriately dealt with via bifurcation.

Toshiba respectfully requests that the Court deny IV's motion, and schedule a conference to discuss case scheduling for Toshiba's patent misuse defense and antitrust counterclaims.

## NATURE AND STAGE OF THE PROCEEDINGS

On March 20, 2013, IV filed a Complaint against four Toshiba entities for the alleged infringement of ten patents.  D.I. 1.  On June 10, 2013, Toshiba filed a motion to dismiss IV's claims of joint infringement and willful infringement, or in the alternative, for a more definite statement (the "Motion to Dismiss").  D.I. 12, 13. On December 4, 2013, Toshiba filed a motion to sever certain IV claims pursuant to Federal Rules of Civil Procedure 20(a)(1) and 21 ("Motion to Case Sever").  D.I. 28, 29. On September 3, 2014, the Court granted Toshiba's Motion to Dismiss with respect to the claims of willful infringement, and denied the motion with respect to the claims of joint infringement.  D.I. 33.  The Court also denied Toshiba's Motion to Sever.  *Id*.

Toshiba filed its Answers to IV's Complaint on September 17, 2014 and their Amended Answers on October 8, 2014, whereby all four Toshiba defendants added a patent misuse defense and Toshiba Corporation and Toshiba America Electronic Components, Inc. added four antitrust counterclaims against five total IV entities.  D.I. 35–38, 43–46.

The Court held a scheduling conference on October 15, 2014, at which time counsel for IV indicated IV would be filing a motion to dismiss Toshiba's antitrust counterclaims.  The Court entered a Scheduling Order on the patent-related issues on October 30, 2014, whereby trial on such claims is scheduled to commence on January 17, 2017.

IV's deadline to Answer or file a Rule 12 motion in response to Toshiba's counterclaims was November 3, 2014.  IV did not file an Answer or Rule 12 motion and did not seek leave of this Court for an extension, instead filing the instant motion to stay.

## SUMMARY OF ARGUMENT

1. Staying Toshiba's patent misuse defense and antitrust counterclaims will not eliminate or simplify the issues for trial, but would instead eliminate the potential for the defense and counterclaims to simplify the issues for trial, and extend the life of this case by years.

2. The potential <u>trial</u> complexities IV asserts can be dealt with by appropriate bifurcation and ordering of issues for trial, and do not support IV's broader request for a stay.

3. IV cannot "demonstrate a clear case of hardship or inequity" that it must show in order to obtain a stay.

4. Granting IV's proposed stay would provide a clear tactical advantage to IV and unduly prejudice Toshiba.

## ARGUMENT

### I. LEGAL STANDARD

District courts have the inherent authority to manage their dockets, including the discretion to stay proceedings where appropriate. *See Cost Bros. Inc. v. Travelers Indemnity Co.*, 760 F.2d 58, 60 (3d Cir. 1985); *Peschke Map Tech., LLC v. J.J. Gumberg Co.*, No. 12-1525, 2014 U.S. Dist. LEXIS 57113, at *7 (D. Del. Apr. 24, 2014). Courts consider three general factors in determining whether to grant a stay:

(1) "whether a stay will simplify the issues for trial;"

(2) "whether the granting of a stay would cause the non-moving party to suffer undue prejudice from any delay or allow the moving party to gain a clear tactical advantage over the non-moving party;" and

(3) "whether discovery is complete and a trial date set."

*Apotex, Inc. v. Senju Pharm. Co.*, 921 F. Supp. 2d 308, 313–14 (D. Del. 2013). And as the Supreme Court and Third Circuit have held:

> It is well settled that before a stay may be issued, the petitioner must demonstrate "a clear case of hardship or inequity," if there is "even a fair possibility" that the stay would work damage on another party.

*Gold v. Johns–Manville Sales Corp.*, 723 F.2d 1068, 1075–76 (3d Cir. 1983) (*quoting Landis v.*

*N. Am. Co.*, 299 U.S. 248, 255 (1936)); *see also ImageVision.Net, Inc. v. Internet Payment Exch.,*

*Inc.*, No. 12-054-GMS-MPT, 2012 U.S. Dist. LEXIS 163234, at *9 (D. Del. Nov. 15, 2012)

(movant must "demonstrate that the denial of a stay would result in a clear case of hardship or

inequity where there is even a fair possibility that a stay would prove detrimental to one of the

parties[,] . . . [this] clearly is the law of this Court.") (internal quotations and citations omitted).

## II.   STAYING TOSHIBA'S PATENT MISUSE DEFENSE AND ANTITRUST COUNTERCLAIMS WILL NOT SIMPLIFY THE ISSUES IN THIS LITIGATION—BUT ALLOWING THEM TO PROCEED <ins>MAY IN FACT</ins> DO SO

As the Third Circuit has described, "a court may hold one lawsuit in abeyance to abide

the outcome of another which may substantially affect it or be dispositive of the issues." *Bechtel*

*Corp. v. Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d Cir. 1976) (citation omitted).

Throughout its motion, IV asserts that a stay will "eliminate" or "simplify" the issues for

trial. Not so. To the contrary, allowing the defense and counterclaims to continue through

pretrial preparations is the course that presents a possibility of simplifying the litigation.

### A.   Staying Toshiba's patent misuse defense will not simplify the issues in the case but instead undermine potential simplification

The basic rule of patent misuse is that a patentee may not impermissibly broaden the

physical or temporal scope of the patent grant with anticompetitive effect. *Princo Corp. v. ITC*,

616 F.3d 1318, 1327–28 (Fed. Cir. 2010). Toshiba alleges that IV is using the patents-in-suit to,

among other things, (1) unlawfully force Toshiba to pay for many other irrelevant patents, (2)

unlawfully force Toshiba to pay for many other invalid patents, and (3) unlawfully monopolize a

market for its portfolio by aggregating thousands of patents into a hold-up portfolio and using the

patents-in-suit to make Toshiba pay monopoly prices for "licenses." *See* D.I. 43 at 16–19.

IV barely pays lip service to Toshiba's patent misuse defense in this case—and does not

attempt to describe, in even a sentence, the basis for the patent misuse defense as set forth above.

5

Instead, IV's sole argument for why the defense should be stayed is as follows:

> [B]ecause patent misuse is simply a defense to an assertion of infringement, the defense will only need to be addressed for those patents on which [IV] ultimately prevails. Thus, if this case is narrowed in any way (or Toshiba is able to prevail on infringement or validity with respect to any of the patents), the scope of the patent misuse issues will be narrowed. *See Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1329 (Fed. Cir. 2010) (the defense of patent misuse applies "only where there had been a misuse of the patent in suit") (citation omitted)).

D.I. 57 at 6.  These assertions are thin, conclusory, and not true.  As an initial matter, *Princo* does not support in any way IV's assertion that "if this case is narrowed in any way (or Toshiba is able to prevail on infringement or validity with respect to any of the patents), the scope of the patent misuse issues will be narrowed." *Id.*  IV thus cites to zero authority (and Toshiba is aware of none) that supports its general proposition.  That is because the proposition is wrong.  As set forth above, all three prongs of Toshiba's patent misuse defense are not <u>in any respect</u> reliant on, dependent on, or affected by IV's patent claims.  Of course, there will be overlap in *discovery*—the patent misuse defense relates to the patents-in-suit, as to which there certainly will be discovery in the underlying patent case—but the "infringement" or "validity" of the patents-in-suit have absolutely nothing to do with IV's improper use of those patents to unlawfully force Toshiba to pay for things entirely different from and beyond the patents-in-suit.

As a result, there is no basis under law to stay the patent misuse defense.  Moreover, and critically, doing so would actually be <u>contrary</u> to judicial economy and efficiency, as well as fairness.  IV's implication that the patent misuse defense is irrelevant prior to a trial on the patent infringement issues is incorrect.  Defendants, on multiple occasions, have prevailed on summary judgment based on patent misuse, when if granted effectively ends the patent claims.[1]  Judicial

---

[1]  *See, e.g., Morton Salt Co. v. G. S. Suppiger Co.*, 314 U.S. 488 (1942) overruled on other grounds by *Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006) (affirming summary judgment based on patent misuse defense); *Senza-Gel Corp. v. Seiffhart*, 803 F.2d 661 (Fed. Cir. 1986) (same); *Berlenbach v. Anderson & Thompson Ski Co.*, 329 F.2d 782 (9th Cir.

economy is obviously well served through the disposition of a case by summary judgment rather than by trial, and by foreclosing discovery through a stay, the court negates the potential for this efficient resolution.  For example, in *Morton Salt Co. v. G. S. Suppiger Co.*, 314 U.S. 488 (1942) *overruled on other grounds by Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006), the Supreme Court upheld the trial court's order granting summary judgment on a patent misuse defense, noting that the trial court disposed of the case without even needing to "pass[ ] on the issues of [patent] validity and infringement."  *Id.* at 489–90.  *Morton* and other cases granting summary judgment on a patent misuse defense show that judicial efficiency requires denial of IV's motion to stay.  Judicial economy is not served by requiring the parties to begin litigating a defense to IV's infringement claims years from now.

### B. Staying Toshiba's antitrust counterclaims will not simplify the issues in the case but instead undermine potential simplification

#### 1. Toshiba's conspiracy claim cannot be "eliminated" or "narrowed" by the patent action

IV ignores Toshiba's conspiracy claim, and never attempts to show how the claim is connected to IV's patent claims.  This is essentially an admission that the claim cannot be stayed.

A cause of action for conspiracy to restrain trade in violation of Section 1 of the Sherman Act requires (i) an agreement, (ii) which unreasonably restrains competition, and (iii) which affects interstate commerce.  *Teva Pharms. USA, Inc., v. Abbott Labs.*, 252 F.R.D. 213, 228 (D. Del. 2008).  Here, Toshiba alleges that IV "combined and conspired with others, including Talon Research, LLC, to restrain trade and competition in the relevant market and to engage in patent hold-up in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1."  Specifically, Toshiba alleges that IV agreed with Talon and others to take patents from IV's "Semiconductor Portfolio" and assert them against companies that refused to succumb to IV's direct hold-up demands.  D.I.

1964) (same); *Krampe v. Ideal Indus., Inc.*, 347 F. Supp. 1384 (N.D. Ill. 1972) (same); *Debuit v. Harwell Enters.*, 336 F. Supp. 1184 (W.D.N.C. 1971) (same).

43 at 21, ¶ 18.  And in fact, on September 26, 2011, IV transferred U.S. Patent No. 5,581,498 to Talon, thus effectively sharing access to IV's portfolio for offensive purposes, and four days later, Talon served Toshiba with a summons for infringing the '498 patent.  *See, e.g.*, *FTC v. Actavis, Inc.*, 133 S. Ct. 2223, 2232 (2013) (conspiracy to assign and assert patents against common targets was illegal regardless of the validity of the patents).

The '498 patent is not part of this suit (it could not be, because IV transferred it to Talon). Thus, whether any of the patents-in-suit are valid or not, or whatever their scope, has nothing to do with Toshiba's Section 1 conspiracy claim.

### 2.    Toshiba's unlawful asset acquisition claim cannot be "eliminated" or "narrowed" by the patent action

IV likewise ignores Toshiba's claim for violation of Clayton Act Section 7, for the same reason: nothing in this claim can be resolved or narrowed by resolution of IV's patent claims.

Section 7 of the Clayton Act provides that "[n]o person . . . shall acquire . . . assets . . . where . . . the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly."  15 U.S.C. § 18.  This claim will turn on Toshiba establishing (i) the existence of a relevant market, (ii) that IV has illegally acquired assets within the relevant market, and (iii) that the effect of those acquisitions has been substantially to lessen competition, and to tend to create a monopoly.  Here, IV's semiconductor patents carried little or no market power until IV acquired and integrated them into an enormous portfolio.  Now, after IV has created a patent-licensing monopoly, they bestow power on IV beyond the summed value of the individual patents; in fact, IV specifically picked its patents to try to exclude Toshiba's and other targets' existing products.  This is a straightforward Section 7 violation.  *See SCM Corp. v. Xerox Corp.*, 645 F.2d 1195, 1205 (2d Cir. 1981) (an antitrust violation would "surely" occur if a dominant firm acquired patents reading on its rivals' existing goods to acquire monopoly power); *see also Kobe, Inc. v. Dempsey Pump Co.*, 198 F.2d 416, 430 (10th Cir. 1952) (Clayton Act

prohibits anticompetitive patent-asset acquisitions)).   And there is nothing in this claim that will be "eliminated" or "narrowed" by the patent action.   Indeed, last month, the *Symantec* court in this district applied *Kobe* to IV, and held that a patent misuse defense based on monopolization and patent aggregation allegations against IV (nearly identical to those brought here) could not be dismissed on the pleadings (or early summary judgment), but justified discovery.   *Intellectual Ventures I LLC v. Symantec Corp.*, No. 13-440- LPS, D.I. 76 (D. Del. Sept. 24, 2014).

### 3.   Toshiba's monopolization claims cannot be "eliminated" or "narrowed" by the patent action

To prove its monopolization claim under Section 2 of the Sherman Act, Toshiba must show that IV willfully acquired monopoly power in a relevant market other than by superior product, historical accident, or business acumen.   *See United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966).   For attempted monopolization, Toshiba much show that IV engaged in anticompetitive conduct with the specific purpose and intent of obtaining monopoly power in a relevant market, and has either already acquired or presents a dangerous probability of achieving monopoly power in that market.   *See Spectrum Sports v. McQuillan*, 506 U.S. 447, 456 (1993). Both claims essentially turn on (i) the existence of a relevant market, (ii) possession or the threat of monopoly power in that market, and (iii) anticompetitive conduct.

The market and monopoly power elements of these claims do not depend on the patent claims in any respect.   Neither does the anticompetitive conduct element, as Toshiba asserts it here against IV.   Toshiba's claims rest on IV unlawfully aggregating its claimed 3,700+ semiconductor patents to secure monopoly power that far exceeds the summed value of those patents when disaggregated.   That acquisition and maintenance of monopoly power is illegal because IV acquired and is maintaining it willfully, rather than by means of superior product, business acumen, or historic accident.   IV combines large numbers of patents regardless of their validity precisely so that it can attack products existing in the marketplace and extract monopoly

rents through the threat of endless litigation.   Nothing in these monopolization claims will be eliminated, mooted or narrowed by the resolution of the patent claims.

IV makes a single argument to the contrary, relying without explanation on an inapposite case, *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, No. 09-80-JJF-MPT, 2010 U.S. Dist. LEXIS 23057 (D. Del. Mar. 11, 2010), that "[a] trial will determine, at the very least, the validity and scope of [IV's] asserted patents, and the scope of [IV's] patent protection may affect its liability under antitrust laws."   D.I. 57 at 5.   IV then asserts that five Toshiba allegations (out of hundreds) "presume that [IV's] patent claims have no merit, and thus depend in large part upon the ultimate resolution of these patent claims." *Id.*

That is the extent of their argument.   It fails.   Whether the patents-in-suit are found valid or invalid will not eliminate or narrow the antitrust counterclaims; validity or invalidity of any individual patent (or the sum of the 10 asserted here) will not "simplify" the antitrust litigation. Toshiba's claims are rooted in IV's abuse of its patent portfolio, of which the patents in suit are a subset; it is not based solely on the patents-in-suit.   The patents-in-suit are but 10 in number, and the counterclaims focus on the aggregation, obfuscation, and threatened assertion of over 3,700 patents.   IV is litigating its patents as a means of asserting its portfolio seriatim <u>regardless of merit</u>—which is what Toshiba says in an allegation IV itself highlights:   "[IV's] strategy of litigating <u>regardless of merit</u> is irrational as to each individual lawsuit, but is rational in pursuit of [IV's] overall anticompetitive hold-up strategy." D.I. 57 at 5, citing D.I. 43 at p. 44, ¶ 62.[2]

---

[2]   To the extent any determination of the validity of the patents-in-suit is relevant to the antitrust counterclaims at all, it will be at most as an exemplar: validity or invalidity of the 10 patents-in-suit will simply be an additional fact for any jury to consider in determining whether Toshiba's antitrust counterclaims have merit.   But such determination will not eliminate or narrow the antitrust issues because the fate of 10 soldier patents does not dispose of or narrow in any respect the question of whether aggregating and then dispatching an army of 3,700 patents against Toshiba constitutes unlawful monopolization.   Thus, at most, this speaks only to whether the Court should bifurcate the antitrust counterclaims for a separate

Finally, although IV does not make this point in its Motion, Toshiba expects that on reply IV will likely argue that at least some portion of Toshiba's claims relates to the allegation that IV has threatened and filed "sham litigation," which can only be determined after the underlying trial in the patent action. Not so. IV's litigation threats are only a part of Toshiba's allegations of anticompetitive conduct—IV's unlawful aggregation of patents and obfuscation/concealment of its portfolio are at the core of the anticompetitive conduct, are independent and sufficient to support an antitrust violation, and again have nothing to do with the patent suit. Moreover, Toshiba's monopolization claims are not based solely on the fact that this particular lawsuit is a "sham litigation." They are based on the fact that IV is using the litigation process itself—and the threat of unending litigation, regardless of merit—to assist it in obtaining monopoly rents. Any assessment of the "merits" of the 10 patents-in-suit cannot eliminate or narrow the key issue: does IV engage in the broad-ranging conduct alleged, and does that violate antitrust law? Whether or not any individual litigation (including this one) is a "sham" is not dispositive.[3]

### C.    IV's other arguments for simplification have no merit

#### 1.    IV's argument that there is "minimal evidentiary overlap" is misplaced and speaks only to issues of severance

IV's argument that there is "minimal evidentiary overlap" between the patent and antitrust issues does not support the stay it seeks. First, there will be some evidentiary overlap: Toshiba's patent misuse defense necessarily involves the patents-in-suit and thus some overlap, and while there is little overlap between the patent claims and antitrust counterclaims on issues and elements of *liability*, there is overlap between patent and antitrust claims as to issues and

---

trial—and not whether any stay should be granted, as the antitrust counterclaims will move forward in full form whatever the ruling in the patent action.

[3]   IV's heavy reliance on this Court's decision in *Eurand, Inc. v. Mylan Pharms., Inc.*, No. 08-889-SLR, 2009 WL 3172197 (D. Del. Oct. 1, 2009), which granted a motion to bifurcate and stayed antitrust discovery primarily on the basis of "sham litigation" issues that turned on whether the underlying patent claims were "objectively baseless," is therefore misplaced.

elements related to *damages* (i.e., IV's "reasonable royalty" calculations, which will inevitably involve whether the amounts sought are augmented by IV's anticompetitive scheme, unlawfully acquired monopoly power, and so on), as courts have found.  *See, e.g.*, *Dentsply Int'l, Inc. v. New Tech. Co.*, No. 96-272 MMS, 1996 U.S. Dist. LEXIS 19846, at *13-15 (D. Del. Dec. 19, 1996); *Ecrix Corp. v. Exabyte Corp.*, 191 F.R.D. 611, 614 (D. Colo. 2000).

Second, and more critically, the claimed minimal evidentiary overlap does not speak to stay issues at all, but only to severance.  IV asserts that the alleged lack of overlap between the patent and antitrust issues means that (i) "[a]llowing defendants to introduce such evidence will serve only to distract the jury from the complicated, primary, and potentially dispositive issue of patent infringement[;] . . . [(ii)] given the scope of Toshiba's assertions, '[t]here is a strong likelihood that consideration of the patent . . . issues will be delayed significantly if tried together with the antitrust issues . . . [;]' [a]nd [(iii)] Toshiba's 'allegations of monopolization could bias the jury when it evaluates [IV's] patent claims.'"  D.I. 57 at 6–7 (citations omitted).  Whatever the merit of these arguments, they are irrelevant to the motion to stay, and involve only whether the defense and counterclaims should be bifurcated for <u>trial</u> purposes.

*Dentsply* is instructive.  In that case, the court found minimal overlap between the patent and antitrust issues, and for that and other reasons ordered bifurcation.  *Dentsply*, 1996 U.S. Dist. LEXIS 19846, at *18; *see also Donnelly Corp. v. Reitter & Schefenacker USA Ltd. P'ship*, No. 1:00-CV-751, 2002 U.S. Dist. LEXIS 15205, at *25 (W.D. Mich. Aug. 13, 2002).  But the *Dentsply* court *rejected* the requested stay of discovery because, among other things, it wanted to avoid disputes over whether discovery related to the patent or antitrust issues.  *Dentsply*, 1996 U.S. Dist. LEXIS 19846, at *18-19.  In other words, *Dentsply* held that "minimal evidentiary overlap" supported bifurcation, but would not minimize discovery fights or otherwise support a stay.  *Id.*  Other courts are in accord.  *See, e.g., Donnelly Corp.*, 2002 U.S. Dist. LEXIS 15205, at

*19–20 (Denying a stay "will eliminate disagreement between the parties about what is and is not related to [patent and antitrust claims] and what discovery is permitted now and what discovery has been stayed"); *Ecrix Corp.*, 191 F.R.D. at 614 (same).

## 2.   The Court should not grant this extensive stay based on an appeal in a different case in a different circuit

IV's argument that "resolution of the pending Federal Circuit appeal captioned *Intellectual Ventures I LLC v. Capital One Financial Corp.*, Appeal Nos. 14-1506, 14-1515 [(4th Cir. Jan 15, 2014)] . . . will likely simplify or eliminate the patent misuse and antitrust issues here" is meritless.  D.I. 57 at 7.  Courts do not stay claims every time an appeal is filed from another district that raises similar issues.  Moreover, the issues and allegations in that case, which IV does not even bother to describe to the Court, are very different from this case,[4] Toshiba is not a party in that case , and any decision on appeal in that case would not be controlling here or simplify anything.  IV does not cite to a single case where a court granted a stay on the basis of an entirely separate and non-controlling lawsuit.  The one case they do cite—this Court's *Apotex* decision—involved a pending appeal *between the same parties on the patents at issue*, and is inapposite.  *Apotex*, 921 F. Supp. 2d at 315 (granting stay pending resolution of the defendant's appeal to the Federal Circuit related to patents at issue in the instant litigation).

## III.   IV SEEKS AN EXTENSIVE AND INDEFINITE DELAY IN ORDER TO OBTAIN TACTICAL ADVANTAGE AND PREJUDICE TOSHIBA

IV's own prior statements to this Court—in opposing Toshiba's Motion for Partial Stay Pending *Inter Partes* Review—make clear that IV itself believes that delay would prejudice the non-moving party to a stay and provide significant tactical advantage to the movant:

---

[4]  In *Capital One,* IV sued a company in a different industry on the basis of a different patent portfolio, and the defendant sought to bring monopolization counterclaims on facts available to it (and did not include a Sherman Act Section 1 conspiracy claim, as Toshiba does here).  Leaving aside discussion of the specifics of the *Capital One* court's holdings on antitrust law (which Toshiba believes to be incorrect), the court's decision there appears to be driven in large part by the view that the allegations were unsupported and conclusory.

- "Toshiba should not be permitted to obtain a tactical advantage by delaying this case[;] . . . Toshiba's proposed stay would result in [IV] waiting five years, and possibly longer, before the litigation even gets started." D.I. 50 at 5, 6.

- "[IV] would be highly prejudiced because it would effectively be denied justice for Toshiba's ongoing infringement, and furthering the delay yields an unfair tactical advantage for Toshiba." D.I. 50 at 5.

- [S]taying this case as Toshiba suggests would fragment the discovery process and cause significant delay. D.I. 50 at 10.

IV said all this in the context of a motion seeking a stay on patents undergoing *inter partes* review, a process that will *indisputably* resolve certain issues related to IV's patent case. It now says the opposite—in the context of claims that have nothing to do with and will not be resolved by the patent case. This alone shows IV's maneuvering for tactical advantage.

### A.   IV does not and cannot "demonstrate a clear case of hardship or inequity" requiring a stay

In order to obtain a stay, IV must at the threshold "demonstrate a clear case of hardship or inequity, if there is even a fair possibility that the stay would work damage on another party." *Gold*, 723 F.2d at 1075–76 (internal quotation marks and citation omitted); *ImageVision.Net, Inc.*, 2012 U.S. Dist. LEXIS 163234, at *9. IV knows this—they cited to this law in opposing Toshiba's motion for a partial stay. D.I. 50 at 4. But any mention or attempt to establish this requirement is missing in IV's own motion.

IV avoids the issue because they have no hope of satisfying the requirement. There can be no legitimate question that there is "a fair possibility" that staying Toshiba's patent misuse defense and antitrust counterclaims for an extensive and indefinite period of time would be detrimental to Toshiba—Toshiba shows below that it would in fact be prejudiced, and IV has admitted that stays by definition mean that the non-movant "would be highly prejudiced because it would effectively be denied justice" for the "ongoing" violation. D.I. 50 at 5. So what is IV's

14

"clear case of hardship or inequity?"  There is none—so IV says nothing on this issue.[5]

**B.      IV's actions in violation of the Federal Rules and Rules of this Court illustrate its maneuvering to obtain tactical advantage**

IV's procedural machinations to date evidence a disregard for the Rules governing judicial process, and demonstrate that IV is seeking tactical advantage.

First, IV chose to ignore the deadline for filing an Answer or Rule 12 motion in response to Toshiba's counterclaims in order to provide support for its argument that it has a right to stay. Pursuant to Rule 12, IV was required to file an Answer or Rule 12 motion in response to Toshiba's counterclaims by November 3, 2014.  *See* Fed. R. Civ. P. 12.  Indeed, at the October 15, 2014 conference, IV indicated that it would be filing a motion to dismiss Toshiba's counterclaims, based on a ruling by a court in Virginia.  See Oct. 15 2014 Tr. at 19.  It did not do so, instead filing the instant motion to stay, which is not a responsive pleading.  *See generally* Fed. R. Civ. P. 8.  No rule or provision allows IV to ignore their deadline for a responsive pleading, and certainly not without asking leave of the Court; that generally results in default, and Toshiba is aware of no case in this district where a party has filed a motion to stay in such circumstances without filing at least an Answer or Rule 12 motion as well.  IV's actions are particularly inappropriate given that, at the October 15 conference, the Court made clear it will not hold up a litigation schedule while motions to stay are pending.  Tr . at 7  ("I don't grant stays generally, and you, I'm sure, know that. So for me to stay an old case waiting for me to make a decision on a stay makes no sense to me.").  Yet IV ignored the deadline, for a simple reason:  to improve its arguments in support of this motion to stay.  *See* D.I. 57 at 9 ("[IV] has not yet

---

[5]    The only assertion in the motion that remotely relates to "harm" is IV's statement that a stay "will, at a minimum, focus the scope of discovery, resulting in significant time and monetary savings for both parties."  D.I. 57 at 8.  But "[t]his type of economic harm has been deemed not to amount to the kind of 'undue' hardship or inequity referenced in the case law."  *See, e.g.*, *SenoRx, Inc. v. Hologic, Inc.*, No. 12-173-LPS-CJB, 2013 U.S. Dist. LEXIS 8044, at *35 (D. Del. Jan. 11, 2013) (citation omitted).

answered the counterclaims.  This factor thus also favors a stay.").  This is improper self-help.

Second, IV has not filed a motion under Federal Rule of Civil Procedure 42 to bifurcate or sever Toshiba's patent misuse defense and antitrust counterclaims.  This, too, is unusual. Toshiba's defense and counterclaims were timely filed, and are currently part of this case.  If IV wished to sever them from the patent claims, and then stay discovery, it should have filed a Rule 42 motion to sever/bifurcate along with a motion to stay.  The only rational explanation for why it did not appears to be, again, a desire for tactical positioning.  As discussed below, IV is seeking to use arguments that support bifurcating issues for trial under Rule 42 to support the far more drastic relief of seeking a full _stay_ of Toshiba's defense and counterclaims.  This is inappropriate.  Issues of jury confusion, bias, and trial efficiency may justify bifurcation of the issues into separate seriatim trials, but cannot justify a full and indefinite stay.

Third, IV violated the local rules by failing to meet and confer with Toshiba or certify that it did pursuant to Local Rule 7.1.1.  Local Rule 7.1.1 requires that "every nondispositive motion shall be accompanied by an averment of counsel for the moving party that a reasonable effort has been made to reach agreement with the opposing party on the matters set forth in the motion."  D. Del. L.R. 7.1.1.  IV did not do so here, but instead filed its surprise "Motion to Stay" without discussing the issue with Toshiba at all.

### C.     Granting the motion to stay would provide IV with a clear tactical advantage and unduly prejudice Toshiba

1.  The extensive and indefinite length of the proposed stay alone is unduly prejudicial. The extensive and indefinite length of the stay sought—at least 4 years, and maybe longer[6]— alone makes it improper.  _See, e.g._, _Gold_, 723 F.2d at 1076 ("[T]he clear damage to the plaintiffs is the hardship of being forced to wait for an indefinite and . . . a lengthy time before their causes

---

[6]  Given the trial(s) on IV's asserted patents beginning January 2017, liability and damages verdicts, post-trial motions, and inevitable appeals, even the most optimistic projection would put final "resolution" of the patent claims at least 4 years away or longer.

are heard."); *Belden Techs. Inc. v. Superior Essex Comm'cns*, No. 08-63-SLR, 2010 U.S. Dist. LEXIS 90960, at *11 (D. Del. Sept. 2, 2010) ("Belden may statistically wait as long as three years . . . this factor cuts against the grant of a stay."); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 257 (1936) ("The stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits . . . ."). This Court has itself denied part of a motion to stay where, among other things, the stay was for an "indefinite" period of time (given the uncertainties of appeal). *See Apotex*, 921 F. Supp. 2d at 316.

2. Prejudicial effects on Toshiba's business in general. In its opposition to Toshiba's motion for partial stay pending *inter partes* review, IV repeatedly emphasized the effects on its business should the stay be granted. *See, e.g.*, D.I. 50 at 6 ("If infringers can escape liability through a strategy of indefinite delay, as Toshiba seeks to do here, no one would pay for a license."). Whatever the merits of that claim as to IV's business, IV cannot deny that Toshiba at a minimum would suffer the same or greater effects based on IV's request for a far longer (and truly indefinite) stay here. Toshiba makes technology products and sells them to consumers around the globe. Through its anticompetitive scheme, IV is seeking to hold-up Toshiba's ability to create, produce and sell its products. Toshiba's entire business must operate under the threat of IV's anticompetitive conduct and hold-up strategy until Toshiba's patent misuse defense and antitrust counterclaims are resolved. This is prejudicial. *See, e.g., In re Packard*, 751 F.3d 1307, 1325 n.21 (Fed. Cir. 2014) ("Even if patent assertion entities do not prevail in the courtroom, their actions can significantly reduce incremental innovation while litigation is ongoing, a situation that can persist for years.") (citation omitted).

3. Market effects from Toshiba being exposed to a potential damages award before it even starts discovery on its patent misuse defense and antitrust counterclaims. IV asks this Court to allow their patent case to reach final resolution before Toshiba can even begin discovery on its

17

patent misuse defense and antitrust counterclaims that, if successful, would dispose of those very patent claims. This is not "efficient"—but moreover, would prejudice Toshiba by potentially requiring it to carry liability on its books for years (a fact that will not be overlooked by the market) while it seeks to vindicate its rights. A hypothetical is illustrative. If such a stay were sought in a contract breach action, it would mean that a defendant could not even seek discovery on, say, a fraud affirmative defense until years *after* liability and damages determinations in the underlying breach claim. This would be untenable—and it is no different to similarly thwart Toshiba from developing and putting on its patent misuse defense.

4. <u>Discouragement of settlement.</u> In its opposition to Toshiba's motion for partial stay pending *inter partes* review, IV also stated that a "lengthy delay also discourages settlement, because it pushes back the consequences of infringement into the distant future." D.I. 50 at 6. The same concern applies here—and more so. Toshiba's motion to stay sought a *partial* stay, of only the few patents undergoing *inter partes* review. *See* D.I. 40. By contrast, IV seeks an extensive and indefinite stay of *all* of Toshiba's antitrust counterclaims and defenses, which would discourage settlement—a factor weighing against any stay. *See, e.g.*, *Donnelly Corp.*, 2002 U.S. Dist. LEXIS 15205, at *27 ("[P]ermitting the parties to have . . . all available evidence[] facilitates settlement . . . ."); *Procter & Gamble Co. v. CAO Grp., Inc.*, No. 1:13-cv-337, 2013 U.S. Dist. LEXIS 163831, at *11 (S.D. Ohio Nov. 18, 2013) (noting incomplete evidence will prejudice party's ability to negotiate settlement).

5. <u>Neutralizing Toshiba's ability to seek early resolution of this litigation via summary judgment.</u> IV's proposed stay would also prejudice Toshiba by prohibiting it from seeking early (pre-trial) resolution of the parties' dispute based on Toshiba's patent misuse defense and antitrust counterclaims. Toshiba understands that either party being granted summary judgment as to its claims and defenses is, at this early stage of the litigation, uncertain. But if IV's stay is

granted, Toshiba loses all ability *to even present* its antitrust issues on summary judgment.

6. <u>Significant tactical advantage to IV by allowing it to continue its anticompetitive</u> <u>scheme with impunity</u>.  By asserting its portfolio monopoly piecemeal, IV can always argue that validity of the "patents-in-suit" will help "narrow" the antitrust claims against it, and thus thwart any effort to have those antitrust claims actually determined (even where, as here, they are based on IV's overall patent portfolio, and not the few patents it has chosen to assert in the instant proceeding).  In this way, IV can further its anticompetitive hold-up scheme by denying its victims the ability to challenge IV's portfolio assertion in court, and IV can achieve its purpose of imposing cost and uncertainty on its victims.

7. <u>Irreparable harm to Toshiba's ability to conduct discovery and pursue its defense and</u> <u>counterclaims</u>.  A lengthy and indefinite stay would also compromise Toshiba's ability to collect full evidence.  *See, e.g.*, *SoftView LLC v. Apple Inc.*, No. 10-389-LPS, 2012 U.S. Dist. LEXIS 104677, at *13–14  (D. Del. July 26, 2012) ("[A] stay in this case would likely last several years; resuming litigation after a protracted stay could raise issues with stale evidence, faded memories, and lost documents. . . . Accordingly, the Court will deny Defendants' motion to stay litigation."); *see also Benefit Funding Sys. LLC, v. Advance Am, Cash Advance Ctrs., Inc.*, No. 12-801-LPS, 2013 U.S. Dist. LEXIS 91057, at *6 (D. Del. June 28, 2013) (recognizing, as to a stay pending *inter partes* review, prejudice from "the possibility of necessary witnesses' memories fading").  This is not a theoretical possibility, but a serious and real concern.  If the stay is granted and Toshiba is unable to pursue discovery until 2018 at the earliest, the amount and quality of discovery it can obtain, at that point, will be seriously compromised.

### D.    IV's conclusory assertions that Toshiba will not suffer prejudice by the proposed extensive and indefinite stay are makeweight

IV does not address the above concerns regarding prejudice to Toshiba—notwithstanding it made near-identical points in its opposition to Toshiba's motion for partial stay.  *See generally*

D.I. 50.   Instead, IV asserts that Toshiba waited 18 months before timely bringing its counterclaims (neglecting to mention that IV itself waited 39 months before bringing its own claims).   But this is all a sideshow.   The question of "prejudice" and "tactical advantage" does not depend on when the parties each timely filed their claims, but on the considerations above. And IV's additional argument that "because the parties do not directly compete, a stay would not cause Toshiba any prejudice" is nonsensical.   D.I. 57 at 2.   Prejudice does not hinge on whether parties in a suit are competitors, and *Pragmatus Telecom, LLC v. Adv. Store Co., Inc.*, No. 12-088-RGA, 2012 U.S. Dist. LEXIS 95036 (D. Del. July 10, 2012) is inapposite.   In *Pragmatus*, the court observed that "Pragmatus is solely in the business of monetizing patents," and would thus not suffer any "clear tactical disadvantage or undue prejudice" from a stay.   *Id.* at *2.   This does not apply to Toshiba, which is not a "patent assertion entity" but an actual developer and manufacturer of real-world products.   If anything, *Pragmatus* stands for the proposition that "patent assertion entities" *like IV here* are not prejudiced by stays, given their business models.

## IV.   THE EARLY STAGE OF THIS LITIGATION DOES NOT JUSTIFY A STAY

Finally, IV also claims that the "early stages of this case favor a stay," including the fact that "IV has not yet answered the counterclaims."   D.I. 57 at 9.   IV is incorrect.   While the case is certainly at a very early stage, this is never a reason in and of itself to stay a proceeding.   *See, e.g., Xilinx, Inc. v. Invention Inv. Fund I LP [IV]*, No. 11-CV-00671, D.I. 129 (N.D. Cal. Nov. 30, 2012) (denying IV's motion to stay although the litigation was in its early stages, because both other factors—prejudice and simplification of issues—weighed against the stay).   And as IV itself told this Court, a stay in this case (despite its early stage) "would fragment the discovery process and cause significant delay."   D.I. 50 at 10.   IV's own words show why its motion should be denied, regardless of the early stage of the litigation.

## CONCLUSION

For the reasons set forth above, the Court should deny IV's motion to stay.

Dated: November 20, 2014

**Of Counsel**:

Mark D. Fowler (*Pro Hac Vice*)
Alan Limbach (*Pro Hac Vice*)
Timothy Lohse (*Pro Hac Vice*)
Brent K. Yamashita (Pro Hac Vice)
Aaron Wainscoat (*Pro Hac Vice*)
Carrie L. Williamson (*Pro Hac Vice*)
Saori Kaji (*Pro Hac Vice*)
Katherine Cheung (*Pro Hac Vice*)
**DLA PIPER LLP (US)**
2000 University Avenue
East Palo Alto, CA  94303-2215
Telephone:   (650) 833-2048
Facsimile:   (650) 687-1138
mark.fowler@dlapiper.com
alan.limbach@dlapiper.com
timothy.lohse@dlapiper.com
brent.yamashita@dlapiper.com
aaron.wainscoat@dlapiper.com
carrie.williamson@dlapiper.com
saori.kaji@dlapiper.com
katherine.cheung@dlapiper.com

Gerald T. Sekimura (*Pro Hac Vice*)
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA  94105-2933
Telephone:   (415) 836.2576
Facsimile:   (415) 659.7476
gerald.sekimura@dlapiper.com

Brian Erickson (*Pro Hac Vice*)
**DLA PIPER LLP (US)**
401 Congress Avenue
Suite 2500
Austin, TX 78701-3799
Telephone:   (512) 457.7059
Facsimile:   (512) 721.2263
brian.erickson@dlapiper.com

**DLA PIPER LLP (US)**

   _/s/ Denise S. Kraft_____
Denise S. Kraft (Bar No. 2778)
Brian A. Biggs (Bar No. 5591)
1201 North Market Street, Suite 2100
Wilmington, DE  19801-3046
Telephone:   (302) 468-5700
Facsimile:   (302) 394-2341
denise.kraft@dlapiper.com
brian.biggs@dlapiper.com

*Attorneys for Defendants Toshiba
Corporation, Toshiba America, Inc., Toshiba
America Electronic Components, Inc. and
Toshiba America Information Systems, Inc.*

Kevin Hamilton *(Pro Hac Vice)*
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Telephone:   (619) 699.2634
Facsimile:   (619) 764.6633
kevin.hamilton@dlapiper.com

Patrick Park *(Pro Hac Vice)*
**DLA PIPER LLP (US)**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA 90067-4704
Telephone:   (310) 595.3113
Facsimile:   (310) 595.3413
patrick.park@dlapiper.com

Daniel M. Wall *(Pro Hac Vice)*
Hanno F. Kaiser *(Pro Hac Vice)*
Sadik Huseny *(Pro Hac Vice)*
Alan Devlin *(Pro Hac Vice)*
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone:   (415) 391-0600
Facsimile:   (415) 395-8095
dan.wall@lw.com
hanno.kaiser@lw.com
sadik.huseny@lw.com
alan.devlin@lw.com