IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC, et al, ) <br> ) <br> Plaintiffs and Counterclaim-Defendants, ) <br> ) <br> v. ) <br> ) <br> TOSHIBA CORPORATION, et al., ) <br> ) <br> Defendants and Counterclaim-Plaintiffs. ) | Civ. No. 13-453-SLR |

**MEMORANDUM ORDER**

At Wilmington this 20th day of March, 2015, having considered plaintiffs' motion to stay and the papers filed in connection therewith;

IT IS ORDERED that said motion (D.I. 56) is granted in part and denied in part, for the reasons that follow:

1. Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC (collectively,"IV") filed the above captioned lawsuit alleging that defendants Toshiba Corporation, Toshiba America, Inc., Toshiba America Electronic Components, Inc., and Toshiba America Information Systems, Inc. (collectively, "Toshiba") infringe multiple claims of ten asserted patents ("the asserted patents") ("IV's case"). In response, Toshiba filed, *inter alia*, a patent misuse defense and antitrust counterclaims. Rather than answer or otherwise respond by filing a pleading, IV filed the instant motion to stay consideration of such defense and counterclaims.

2. With respect to Toshiba's patent misuse defense,

> Toshiba alleges that IV is using the patents-in-suit to, among other things, (1) unlawfully force Toshiba to pay for many other irrelevant patents, (2) unlawfully force Toshiba to pay for many other invalid patents, and (3) unlawfully monopolize a market for its portfolio by aggregating thousands of patents into a hold-up portfolio and using the patents-in-suit to make Toshiba pay monopoly prices for "licenses."

(D.I. 61 at 5)

3. With respect to Toshiba's antitrust counterclaim under Section I of the Sherman Act, 15 U.S.C. § 1, Toshiba generally alleges that IV "combined and conspired with others, including Talon Research, LLC, to restrain trade and competition in the relevant market and to engage in patent hold-up in violation of Section 1 of the Sherman Act." More specifically, "IV agreed with Talon and others to take patents from IV's 'Semiconductor Portfolio' and assert them against companies that refused to succumb to IV's direct hold-up demands." (*Id.* at 7)

4. With respect to Toshiba's antitrust counterclaim under Section 7 of the Clayton Act, 15 U.S.C. § 18, Toshiba alleges that

> IV's semiconductor patents carried little or no market power until IV acquired and integrated them into an enormous portfolio. Now, after IV has created a patent-licensing monopoly, they bestow power on IV beyond the summed value of the individual patents.

(*Id.* at 8)

5. Finally, in connection with its monopolization and attempted monopolization claims under Section 2 of the Sherman Act, 15 U.S.C. § 2,

> Toshiba's claims rest on IV unlawfully aggregating its claimed 3,700+ semiconductor patents to secure monopoly power that far exceeds the summed value of those patents when disaggregated. That acquisition and maintenance of monopoly power is illegal because IV acquired and is maintaining it willfully, rather than by means of superior product, business acumen or historic accident. IV

2

> combines large numbers of patents regardless of their validity precisely so that it can attach products existing in the marketplace and extract monopoly rents through the threat of endless litigation.

(*Id.* at 9)

6. In most cases, patent misuse defenses and antitrust counterclaims are related to, and co-extensive with, the scope of the patent litigation in which they are asserted. It makes sense under those circumstances to stay consideration of such defenses and counterclaims, as they are based in large measure on the efficacy of the patent litigation itself; e.g., if the patents are deemed valid by the fact-finder, there is no basis for a patent misuse defense or antitrust remedies.

7. Toshiba asserts that the above reasoning is not applicable to its defenses and counterclaims at bar because the ten patents-in-suit are just a small sampling of Toshiba's focus, that is, IV's "3,700+" patent portfolio. I agree to a point and, in an effort to be consistent with my past practice of staying such defense and counterclaims until the traditional patent claims of infringement and invalidity have been decided, will have Toshiba's defenses and counterclaims proceed as follows:

    a. I will stay the defense of patent misuse and all aspects of the antitrust counterclaims that involve the validity of IV's patent portfolio.[1] More specifically, in the given context of a 3,700+ patent portfolio, I conclude that there is no reasonable way to determine how many of such patents are invalid and, if so, how many such "invalid" patents it takes to tip the balance between a legal and an illegal business practice,

---

[1] *See,* **for example,** D.I. 61 at 9 ("IV combines large numbers of patents regardless of their validity"); *id.* at 10 (IV's "strategy of litigating regardless of merit is irrational as to each individual lawsuit, but is rational in pursuit of [IV's] overall anticompetitive hold-up strategy.").

particularly if a jury has found one or more of the asserted patents valid. Moreover, there is potential for much mischief if the patent misuse defense were tried with IV's case, the possible inference being that the ten patents-in-suit are invalid by association with the remaining portfolio patents.

        b. To the extent Toshiba relies in its antitrust counterclaims on the numerosity and value (i.e., presuming validity) of IV's patent portfolio and IV's allegedly improper leveraging of such, I agree that a stay is not warranted, as there are no overlapping issues with IV's case. Although I recognize the discovery and evidentiary challenges associated with Toshiba's allegations as to the market value of IV's individual patents versus the aggregate value of IV's patent portfolio,[2] these are issues that sound in antitrust law and may proceed, albeit on a bifurcated schedule from IV's case.

_____
United States District Judge

---

[2] See, e.g., D.I. 61 at 8 ("IV's semiconductor patents carried little or no market power until IV acquired and integrated them into an enormous portfolio.").