IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC, <br><br> Plaintiffs, <br><br> v. <br><br> TOSHIBA CORPORATION, TOSHIBA AMERICA, INC., TOSHIBA AMERICA ELECTRONIC COMPONENTS, INC., TOSHIBA AMERICA INFORMATION SYSTEMS, INC., <br><br> Defendants. | Civ. No. 13-453-SLR/SRF |

**MEMORANDUM ORDER**

At Wilmington this 15th day of May, 2015, having reviewed defendants' motion for partial stay pending inter partes review ("IPR")[1] and the papers submitted in connection therewith;

IT IS ORDERED that said motion (D.I. 40) is denied, for the reasons that follow:

1. **Procedural background.** Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC (collectively "IV"), after several years of failed negotiations, filed this patent infringement action on March 20, 2013 against defendants Toshiba Corporation, Toshiba America, Inc., Toshiba America Electronic Components, Inc., and Toshiba America Information Systems, Inc. (collectively, "Toshiba"). In the following

---

[1] Pursuant to 35 U.S.C. §§ 311 et seq.

months, Toshiba petitioned for IPR of five of the ten patents-in-suit ("the IPR patents),[2] and filed four preliminary motions in the above captioned litigation,[3] including the instant motion for partial stay of the case as it relates to the IPR patents.

2. **Standard of review.** As recognized by the Supreme Court of the United States, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). Put another way, the decision of whether to grant a stay rests within the sound discretion of the court through the exercise of judgment, "weigh[ing] competing interests and maintain[ing] an even balance." *Id.* See also *Cost Bros. Inc. v. Travelers Indemnity Co.*, 760 F.2d 58, 60 (3d Cir. 1985); *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988). Since the enunciation of the standard by the Supreme Court in 1936, courts have identified the ubiquitous "factors" which should be used as guidance in determining whether a stay is appropriate, for instance:

> "(i) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (ii) whether a stay will simplify the issues in question and trial of the case; and (iii) whether discovery is complete and whether a trial date has been set." *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999); see also *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212,

---

[2]The Patent Trial and Appeal Board ("the PTAB") has instituted review of four of the five patents-in-suit as follows: (1) U.S. Patent No. 6,058,045 - IPR filed on October 31, 2013 and instituted on May 5, 2014; (2) U.S. Patent No. 7,836,371 - IPR filed on December 30, 2013 and instituted on July 11, 2014; (3) U.S. Patent No. 5,687,132 - IPR filed on December 31, 2013 and instituted on June 17, 2014; and (4) U.S. Patent No. 5,500,819 - IPR filed on February 7, 2014 and instituted on August 8, 2014. The PTAB rejected IPR review for U.S. Patent No. 6,618,788. (D.I. 50 at 3)

[3](D.I. 12, 28, 40 and 115)

2

217 (D. Del. 1991).

Nokia Corp. v. Apple, Inc., Civ. No. 09-791-GMS, 2011 WL 2160904 at *1 (D. Del. June 1, 2011). Although this case is not subject to §18 of the America Invents Act ("AIA"), it is instructive (since defendants reference the AIA in any event)[4] to address a fourth factor, that is, "whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court." AIA §18(b)(1)(D).

3. **Analysis.** I start with the recognition that the instant litigation reflects a business dispute between patent owners and alleged infringers. Traditionally, most business disputes were, and should have been, resolved through a business solution;[5] because businesses are really people, business solutions are not generally reached without the motivating force of a firm trial date. Of course, the traditional playing field for patent disputes has been dramatically altered by such legislation as the AIA and its far-reaching ramifications, including its intrusion into the courtroom and the exercise of judicial discretion,[6] and the generation of a cottage industry for administrative review of patent validity. In this regard, recall that up until the 1990s and the Federal Circuit's decision in State Street Bank & Trust Co. v. Signature Fin. Group, Inc., 149 F.3d 1368

---

[4]Toshiba, in fact, noted at the outset of its argument that, "[b]y enacting the AIA, Congress replaced the pre-existing inter partes reexamination procedure with the IPR procedure with the intent to provide a 'faster, less costly alternative to civil litigation to challenge patents.'" (D.I. 41 at 7) (citations omitted) I note for the record that no one apparently expects the parties themselves or their counsel to exercise any self-restraint during the litigation process, instead requiring such to be thrust upon them by judicial mandate or legislative fiat.

[5]Compare, e.g., Versata Software, Inc. v. Callidus Software, Inc., 771 F.3d 1368 (Fed. Cir. 2014), and D.I.s 148 and 150 of Civ. No. 12-931 (D. Del.).

[6]See, e.g., AIA, § 18(b)(2).

3

(Fed. Cir. 1998), *abrogated by In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008), there was a reluctance to find computer-based inventions patentable. *See, e.g.,* 33 Fed. Reg. 15581, 15609-10 (1968); *Diamond v. Diehr*, 450 U.S. 175, 219 (1981) (J. Stevens, dissent). Once the floodgates opened, the number of issued patents grew exponentially. Indeed, the number of utility patents issued annually by the PTO more than doubled between 1998 and 2014. U.S. Patent and Trademark Office, Patent Technology Monitoring Team (PTMT), *Extended Year Set – all Technologies (Utility Patents) Report* (Mar. 18, 2015).[7] The number of issued patents in the category of "data processing: software development, installation, and management"[8] increased from 318 patents in 1998 to 2,193 in 2014. U.S. Patent and Trademark Office, Patent Technology Monitoring Team (PTMT), *Patent Counts By Class By Year* (Mar. 18, 2015).[9] The relevant categories for the IPR patents present similar increases: "static information storage and retrieval" increased from 1,515 in 1998 to 2,930 in 2014;[10] "active solid-state devices (e.g., transistors, solid-state diodes)" from 2,418 to 9,991;[11] "error detection/correction and fault detection/recovery" from 1,076 to 2,696.[12] *Id.*

Inevitably, business models changed and some of the original patentees sold

---

[7] Available at http://www.uspto.gov/web/offices/ac/ido/oeip/taf/h_at.htm.

[8] Class 717.

[9] Available at http://www.uspto.gov/web/offices/ac/ido/oeip/taf/cbcby.htm.

[10] Class 365, U.S. Patent Nos. 5,500,819; 5,687,132; and 6,058,045.

[11] Class 257, U.S. Patent No. 6,058,045.

[12] Class 714, U.S. Patent No. 7,836,371.

4

their intellectual property to others (often "non-practicing entities") rather than try to monetize or otherwise enforce their entire portfolio themselves. By all accounts, when the new owners engaged their business model and started to aggressively enforce their patents through litigation against even leaders in the industry (among many others), the considerable resources of the business community coalesced and lobbied Congress successfully to "reduce the burden of litigation" by (in effect) shifting the costs to the public. Rather than resolving business disputes, we are now reviewing patents through the administrative lens of the PTO, which has had to increase its size by several thousand employees (a 31% increase in personnel) to take on the tasks assigned by Congress. U.S. Patent and Trademark Office, *Performance and Accountability Report (PAR), Fiscal Year 2014*, at 169 & Table 29 (Mar. 18, 2015).[13] Consistent with its mandate, the PTAB has accepted 65% of the patent claims challenged through IPR, and has found 38% of those claims invalid. U.S. Patent and Trademark Office, Inter Partes Review Petitions Terminated to Date (April 30, 2015).[14] It perhaps is understandable, then, that I approach this exercise with a degree of cynicism. Nevertheless, with this context in mind, I will analyze the facts of record under the appropriate standard of review.

4. **Undue prejudice.** As courts have recognized, plaintiffs "will suffer some prejudice from a stay, due to loss of their chosen forum, the possibility of necessary witnesses' memories fading, and negative impact on their ability to license the patents-

---

[13]Available at http://www.uspto.gov/about/stratplan/ar/USPTOFY2014PAR.pdf.

[14]Available at http://www.uspto.gov/sites/default/files/documents/inter_partes_review_petitions_%2004%2030%202015_0.pdf.

in-suit." *Benefit Funding Sys. LLC v. Advance Am., Cash Advance Centers, Inc.*, Civ. No. 12-801-LPS, 2013 WL 3296230, at *2 (D. Del. June 28, 2013). Because patent licensing is a core aspect of IV's business, and because there has already been substantial delay (pre- and post-litigation) in moving the parties' dispute forward, I find that a stay would unduly prejudice and present a clear tactical disadvantage to IV.

5. "It is well settled that before a stay may be issued, the petitioner must demonstrate 'a clear case of hardship or inequity,' if there is 'even a fair possibility' that the stay would work damage on another party." *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1075-76 (3d Cir. 1983) (*quoting Landis,* 299 U.S. at 255). Toshiba has not demonstrated a clear case of hardship or inequity if the motion for stay is denied. Toshiba chose to contest validity through the IPR process and, therefore, cannot complain that it is being prejudiced by the dual track proceedings it initiated. *See Clouding IP, LLC v. SAP AG,* Civ. No. 13-1456-LPS, D.I. 35 (D. Del. Jan. 21, 2014).

6. **Timing.** This factor - the comparative progress of the litigation vis a vis the IPR - overlaps with the first factor - the comparative prejudice to the non-moving vis a vis the moving parties. In this regard, courts look to such factors as the timing of the review request, the timing of the request for stay, the status of the review proceedings, and the status of the litigation. Looking at the facts of this case, Toshiba filed its request for review after the litigation was instigated, and the request for stay was not filed until after Toshiba's preliminary wave of motions was decided and a scheduling conference was set.[15] "A request for reexamination made well after the onset of

---

[15]The decisions issued on September 3, 2014 (D.I. 33), a scheduling conference was set by order dated September 22, 2014 (D.I. 39), and the motion at bar was filed

6

litigation followed by a subsequent request to stay may lead to an inference that the moving party is seeking an inappropriate tactical advantage." *Belden Techs. Inc. v. Superior Essex Comm'ns LP,* Civ. No. 08-63-SLR, 2010 WL 3522327, at *2 (D. Del. Sept. 2, 2010). Such an inference could be drawn from the facts of record.

7. **Simplification.** The facts of record further demonstrate that a stay will not simplify the issues in question and trial of the case, primarily because the NAND flash memory technology is at issue in both the IPR patents and other patents-in-suit not subject to the IPR. In other words, discovery on those products will proceed regardless of whether the stay is granted or not; the burden of litigation will not be reduced even if a stay were put in place.[16]

8. Indeed, under the circumstances of the instant litigation - the relatively advanced status of the review proceedings as compared to the trial date - **not** staying the case will provide the benefits identified by Toshiba. The IPR determinations are expected by August 2015, before the claim construction exercise in this case concludes. Rather than stay and fragment the litigation process,[17] it makes imminent

---

on September 26, 2014 (D.I. 40). A scheduling order was entered on October 30, 2014, with a trial date of January 17, 2017. (D.I. 55)

[16]As noted by Toshiba, if IV amends any claims during the IPR, IV may lose the right to enforce those claims against Toshiba. 35 U.S.C. § 318(c). Toshiba goes on to argue that "the IPR could nullify any work performed by the Court and the parties related to the IPR patents, potentially wasting judicial resources and resulting in unnecessary cost to the parties." (D.I. 41 at 9-10) Given the circumstances of the case, however, where IV has decided it will not seek to amend any claims in the '045, '371 or '132 IPR proceedings, and where there is overlapping discovery in any event, Toshiba's argument in this regard is not a persuasive one.

[17]Recalling that Toshiba's NAND flash memory products are at issue with respect to both the IPR and some of the non-IPR patents.

7

sense to proceed with the litigation and take whatever guidance and valuable analysis provided by the PTAB into account as is appropriate.

9. Regarding validity, because Toshiba chose to take the validity dispute to the PTAB through the IPR procedure rather than litigating validity in this court, Toshiba is now estopped from challenging validity of the IPR patents in any civil action based "on any ground that the petitioner raised or reasonably could have raised during that inter partes review." 35 U.S.C. § 315(e)(2). Consequently, the parties no longer need to litigate those validity issues with respect to the four IPR patents in this action.

10. As to claim construction, it is important to acknowledge that, at this juncture, the PTAB and the courts apply different standards. "[U]nlike in district courts, in reexamination proceedings claims are given their broadest reasonable interpretation, consistent with the specification. . . ." *In re Swanson*, 540 F.3d 1368, 1377-78 (Fed Cir. 2008) (internal citation marks omitted). *See also* 37 C.F.R. § 42.100(b). In contrast to this more lenient standard of proof, district courts have been directed to use a "proper-meaning approach" to claim construction, as illustrated in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc).[18] Robert M. Asher, *Harmonizing Standards for District Court and PTAB Claim Construction*, American Bar Association (Aug. 4, 2014).[19] In addition, in PTO proceedings, the standard of proof - a preponderance of evidence -

---

[18] I suggest that the "expertise" of the PTO is better suited to its broadest reasonable construction approach, while the adversarial give-and-take of litigation which sheds light on motive and a more extensive range of information (even if extrinsic and used sparingly) is better suited to the proper-meaning approach.

[19] Available at http://apps.americanbar.org/litigation/committees/intellectual/articles/summer2014-0814-harmonizing-standards-district-court-ptab-claim-construction.html.

8

is substantially lower than in a civil case, *In re Caveney*, 761 F.2d 671, 674 (Fed. Cir. 1985), where the standard is "clear and convincing" evidence with a presumption of validity. *See In re Etter,* 756 F.2d 852, 857 (Fed. Cir. 1985). And, of course, the PTO generally is limited in its validity review with respect to the challenges it may consider. *See, e.g., Ethicon*, 849 F.2d at 1427. Clearly, then, "precise duplication of effort does not occur" because of the above described differences between administrative and judicial proceedings. *See id.*

11. I recognize, as Toshiba argues, that denying the stay as to the IPR patents "risks the very real possibility that this Court and the PTO could issue inconsistent rulings, requiring the Federal Circuit to overturn this Court's decision in favor of the PTO's decision on invalidity." (D.I. 41 at 14-15) Such a risk was contemplated before the enactment of the AIA, *see Ethicon*, 849 F.2d at 1429; it is a risk that is minimized under the extant circumstances and, in any event, has not (to the best of my knowledge) generated much concern or resulted in the contemplated "awkwardness" at the Federal Circuit or elsewhere. Indeed, when you keep both the administrative and judicial tracks moving, the competitive business world benefits from the timely presentation of both in the Federal Circuit, the final arbiter of any substantive differences: more information generally makes for a better decision.

12. **Conclusion.** I conclude that Toshiba has not carried its burden of persuasion that a stay is warranted under the facts of this case. Because the potential simplification from the IPR has either already accrued (e.g., in the case of validity) or will accrue before it is needed without a stay (e.g., claim construction or summary

9

judgment briefing), a stay is not warranted at bar. Toshiba's arguments to the contrary are either speculative or fail to consider the timing issues and subject matter overlap described above.

                                                _____
                                                United States District Judge