**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC, | ) ) ) | |
| | ) | C.A. No. 13-453-SLR-SRF |
| Plaintiffs, | ) ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) ) | |
| TOSHIBA CORPORATION, TOSHIBA AMERICA, INC., TOSHIBA AMERICA ELECTRONIC COMPONENTS, INC., and TOSHIBA AMERICA INFORMATION SYSTEMS, INC., | ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |
| TOSHIBA CORPORATION and TOSHIBA AMERICA ELECTRONIC COMPONENTS, INC., | ) ) ) ) | |
| Counterclaim-Plaintiffs, | ) ) | |
| v. | ) ) | |
| INTELLECTUAL VENTURES I LLC, INTELLECTUAL VENTURES II LLC, INTELLECTUAL VENTURES MANAGEMENT, LLC, INVENTION INVESTMENT FUND I, L.P., and INVENTION INVESTMENT FUND II, LLC, | ) ) ) ) ) ) ) ) | |
| Counterclaim-Defendants. | ) ) ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS' RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW AND, IN THE ALTERNATIVE, MOTION FOR
A NEW TRIAL REGARDING INFRINGEMENT OF U.S. PATENT NO. 5,938,742 AND
CONDITIONAL MOTION FOR A NEW TRIAL REGARDING
<u>INVALIDITY OF U.S. PATENT NO. 5,500,819</u>**

Dated:  March 13, 2017

Of Counsel:

Mark D. Fowler (*Pro Hac Vice*)
Carrie L. Williamson (*Pro Hac Vice*)
Brent Yamashita (*Pro Hac Vice*)
Saori Kaji (*Pro Hac Vice*)
Lauren J. Tsuji (*Pro Hac Vice*)
**DLA PIPER LLP (US)**
2000 University Avenue
East Palo Alto, CA  94303-2215
Telephone:   (650) 833-2048
Facsimile:     (650) 687-1138
mark.fowler@dlapiper.com
carrie.williamson@dlapiper.com
brent.yamashita@dlapiper.com
saori.kaji@dlapiper.com
lauren.tsuji@dlapiper.com

Gerald T. Sekimura (Pro Hac Vice)
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA  94105-2933
Telephone:   (415) 836.2576
Facsimile:     (415) 659.7476
gerald.sekimura@dlapiper.com

Patrick Park (Pro Hac Vice)
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA  90067-4704
Telephone:   (310) 595.3113
Facsimile:     (310) 595.3413
patrick.park@dlapiper.com

Denise S. Kraft (DE Bar No. 2778)
Brian A. Biggs (DE Bar No. 5591)
**DLA PIPER LLP (US)**
1201 North Market Street, Suite 2100
Wilmington, DE  19801-3046
Telephone:   (302) 468-5700
Facsimile:     (302) 394-2341
denise.kraft@dlapiper.com
brian.biggs@dlapiper.com

Attorneys for Defendants Toshiba
Corporation, Toshiba America, Inc., Toshiba
America Electronic Components, Inc. and
Toshiba America Information Systems, Inc.

## TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ................................................................................................ 1

II.   NATURE AND STAGE OF THE PROCEEDINGS ....................................... 1

III.  SUMMARY OF THE ARGUMENT ............................................................... 2

IV.   STATEMENT OF FACTS ............................................................................... 5

V.    ARGUMENT ................................................................................................... 5

    A.    LEGAL STANDARDS ......................................................................... 5

    B.    IV FAILED TO ADDUCE EVIDENCE SUFFICIENT TO SUPPORT A FINDING OF INFRINGEMENT OF THE '742 PATENT. .............................. 6

        1.    The Accused Toshiba Products Do Not Practice The "Data Transfer Speed" Limitation Of Claims 62 And 63. ..................................... 7

            a.    The Accused Toshiba Products do not send the "speed at which the peripheral device can transfer data" *after* address initialization. ............................................................................ 7

            b.    The descriptors relied upon by IV neither identify nor even indirectly reflect the "data transfer speed" at which the peripheral device can transfer data. .................................... 9

            c.    IV failed to show that the device_qualifier descriptor actually has been used as required by the claims during operation of the Accused Toshiba Products in the United States. ...................... 10

        2.    IV Failed To Prove Infringement By Toshiba Products Without USB Host Controllers. .................................................................................. 11

        3.    IV Failed To Prove Direct Infringement By Customers. .......................... 12

        4.    IV Failed To Prove Toshiba Induced Infringement. ................................. 13

            a.    The legal standard for actual knowledge and willful blindness. ...... 13

            b.    IV failed to provide substantial evidence of Toshiba's actual knowledge of, or willful blindness to, its customers' alleged infringement. .................................................................. 15

        5.    IV Failed To Prove Toshiba Corp. Engaged In Infringement. .................... 21

    C.    IN THE ALTERNATIVE, TOSHIBA SHOULD BE GRANTED A NEW TRIAL REGARDING INFRINGEMENT OF THE '742 PATENT ................. 21

    D.    TOSHIBA REQUESTS A NEW TRIAL ON THE '819 PATENT IF THE JURY VERDICT OF NON-INFRINGEMENT IS OVERTURNED. ............... 23

VI.   CONCLUSION ................................................................................................ 25

# TABLE OF AUTHORITIES

**CASES**                                                                                                              **PAGE(S)**

*Advanced Display Sys., Inc. v. Kent State Univ.*,
    212 F. 3d 1272 (Fed. Cir. 2000) ..............................................................................................6, 22

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    797 F.3d 1020 (Fed. Cir. 2015)..........................................................................................21

*Amazon.com, Inc. v. BarnesAndNoble.com, Inc.*,
    239 F.3d 1343 (Fed. Cir. 2001)..........................................................................................25

*Apeldyn Corp. v. AU Optronics Corp.*,
    Case No. 8-568-SLR, 831 F. Supp. 2d 817 (D. Del. 2011) ....................................... 15, 17

*Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Techs.*,
    709 F.3d 1348 (Fed. Cir. 2013)..........................................................................................12

*Asahi Glass Co. v. Guardian Indus. Corp.*,
    886 F. Supp. 2d 369 (D. Del. 2012)......................................................................................6

*Ayoub v. Spencer*,
    550 F.2d 164 (3d Cir. 1977) ...............................................................................................23

*Ball Aerosol and Specialty Container, Inc. v. Limited Brands, Inc.*,
    555 F.3d 984 (Fed. Cir. 2009)............................................................................................12

*Brennan v. Norton*,
    350 F. 3d 399 (3d Cir. 2003)...........................................................................................6, 21

*CEATS, Inc. v. Continental Airlines*,
    526 Fed. Appx. 966, 2013 WL 1776814 (Fed. Cir. 2013)...................................................22

*Centillion Data Sys., LLC v. Quest Commc'ns Int'l, Inc.*,
    631 F.3d 1279 (Fed. Cir. 2011)..........................................................................................21

*Commil USA, LLC v. Cisco Sys., Inc.*,
    135 S.Ct. 1920...................................................................................................................17

*Cordis Corp. v. Boston Sci. Corp.*,
    658 F.3d 1347 (Fed. Cir. 2011)........................................................................................5, 6

*DSU Med. Corp. v. JMS Co., Ltd.*,
    471 F.3d 1293 (Fed. Cir. 2006)..........................................................................................13

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
    363 F.3d 1263 (Fed. Cir. 2004)..........................................................................................13

i

*Ecolab, Inc. v. FMC Corp.,*
  569 F.3d 1335 (Fed. Cir. 2009)(Fed. Cir. 2009) ...................................................................20

*Ericsson, Inc. v. D-Link Sys., Inc.,*
  773 F.3d 1201 (Fed. Cir. 2014)..........................................................................................22

*Exergen Corp. v. Wal–Mart Stores, Inc.,*
  575 F.3d 1312 (Fed.Cir.2009) ............................................................................................25

*Fujitsu Ltd. v. Netgear Inc.,*
  620 F.3d 1321 (Fed. Cir. 2010)................................................................................. 7, 10, 12

*Global-Tech Appliances, Inc. v. SEB, S.A.,*
  563 U.S. 754 (2011) .................................................................................................... passim

*i4i Ltd. P'ship v. Microsoft Corp.,*
  598 F.3d 831 (Fed. Cir. 2010)......................................................................................1, 13

*Info-Hold, Inc. v. Muzak LLC,*
  783 F.3d 1365 (Fed. Cir. 2015).........................................................................................14

*Intellectual Ventures I and II LLC v. Canon Inc.,*
  Case No. 11-cv-792-SLR, 104 F.Supp.3d 629, 637 (D. Del. 2015) ...............................6, 14

*Kim v. ConAgra Foods, Inc.,*
  465 F.3d 1312 (Fed. Cir. 2006)..........................................................................................12

*Medisim Ltd. v. BestMed, LLC,*
  758 F.3d 1352 (Fed. Cir. 2014)..........................................................................................23

*Medtronic, Inc. v. Mirowski Family Ventures, LLC,*
  134 S.Ct. 843 (2014)...........................................................................................................16

*MobileMedia Ideas LLC v. Apple Inc.,*
  780 F.3d 1159 (Fed. Cir. 2015)......................................................................................6, 12

*Pannu v. Iolab Corp.,*
  155 F.3d 1344 (Fed. Cir. 1998)............................................................................................5

*Shockley v. Arcan, Inc.,*
  248 F.3d 1349 (Fed. Cir. 2001)..........................................................................................21

*Suprema, Inc. v. Int'l Trade Com'n,*
  626 Fed. Appx. 273, 2015 WL 5315371 (Fed. Cir. 2015)...................................................14

*Therasense, Inc. v. Becton, Dickinson & Co.,*
  593 F.3d 1325 (Fed. Cir. 2010)..........................................................................................23

ii

*TiVo Inc. v. EchoStar Communications Corp.*,
    516 F.3d 1290 (Fed. Cir. 2008) .................................................................................................25

*Unwired Planet, LLC v. Apple Inc.*,
    829 F.3d 1353 (Fed. Cir. 2016).................................................................................................20

*Vehicle IP, LLC v. AT & T Mobility LLC*,
    Case No. 09–1007–LPS, 2016 WL 7647522 (D. Del. Dec. 30, 2016)....................................20

**STATUTES**

35 U.S.C § 271(b) ..........................................................................................................................13

35 U.S.C § 298 ...............................................................................................................................20

**OTHER AUTHORITIES**

Fed. R. Civ. P. 50(a)....................................................................................................................2, 5

Fed. R. Civ. P. 50(b) ...................................................................................................................1, 5

Fed. R. Civ. P. 59 ........................................................................................................................1, 6

Fed. R. Civ. P. 59(a)(1)(A) ............................................................................................................6

Fed. R. Civ. P. 50(c)(1)................................................................................................................23

iii

## I.     INTRODUCTION

Pursuant to Fed. R. Civ. P. 50(b), Toshiba Corporation ("Toshiba Corp.") and Toshiba America Information Systems, Inc. ("TAIS") respectfully renew their motion for judgment as a matter of law ("JMOL") of no infringement of claims 62 and 63 of U.S. Patent No. 5,938,742 ("the '742 patent").[1]  Plaintiff Intellectual Ventures I LLC ("IV") asserted (1) unidentified Toshiba customers literally directly infringed claims 62 and 63, and (2) Toshiba induced those customers to infringe.  IV failed to provide sufficient evidence from which a reasonable jury could conclude that customers of Toshiba products that comply with USB Version 2.0 and/or subsequent versions and revisions (the "Accused Toshiba Products") practice the "performing a get peripheral identification sequence" limitation by sending "data transfer speed" as required by that limitation.  IV further failed to produce sufficient evidence from which a reasonable jury could conclude that Toshiba had "knowledge that the induced acts constitute patent infringement" and "specific intent to encourage another's infringement."  *Global-Tech Appliances, Inc. v. SEB, S.A.*, 563 U.S. 754, 765-66 (2011); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 851 (Fed. Cir. 2010).  As a result, Toshiba respectfully requests that the Court grant it JMOL of no infringement.  In the alternative, Toshiba respectfully moves for a new trial pursuant to Fed. R. Civ. P. 59 on the issue of infringement of the '742 patent.

Pursuant to Rules 50(c)(1) and 59, Toshiba Corp. and TAEC also move conditionally for a new trial on the issue of invalidity of asserted claims 17 and 19 of U.S. Patent No. 5,500,819 ("the '819 patent") if the Court overturns the jury's verdict that Toshiba did not induce or contribute to infringement of those claims.

## II.     NATURE AND STAGE OF THE PROCEEDINGS

The Court held an eight-day jury trial on the liability issues concerning U.S. Patent No.

---

[1] Hereafter, with respect to any discussion concerning the '742 patent, "Toshiba" refers to Toshiba Corp. and TAIS.  With respect to any discussion concerning the '270, '431 or the '819 patents, "Toshiba" refers to Toshiba Corp. and Toshiba America Electronic Components, Inc. ("TAEC").

1

5,701,270 ("the '270 patent"), U.S. Patent No. 5,568,431 ("the '431 patent") and the '819 patent on January 17-19, 23-26 and 30, 2017.  On January 30, the jury found: (1) claim 1 of the '270 patent was invalid; (2) Toshiba did not infringe claims 1 and 2 of the '431 patent; and (3) Toshiba did not induce or contribute to the infringement of claims 17 and 19 of the '819 patent.[2]  D.I. 607.

The Court held a four-day jury trial on the issue of infringement of the '742 patent on February 6, 7, 8 and 10, 2017.  On February 8, Toshiba filed a motion for JMOL under Fed. R. Civ. P. 50(a) of no infringement of the asserted claims (claims 62 and 63) of the '742 patent.  D.I. 631.  Toshiba supplemented its motion for JMOL after the close of evidence.  Ex. A, TT 586:8-15.[3]  The Court reserved judgment on Toshiba's motion.  Ex. A, TT 586:16-17.  On February 10, the jury found that Toshiba induced infringement of the asserted claims of the '742 patent.

## III.    SUMMARY OF THE ARGUMENT

There is insufficient evidence to support the jury's finding that Toshiba induced infringement of asserted claims 62 and 63 of the '742 patent.  First, there is no evidence of direct infringement of the asserted claims.  The asserted claims, as construed by the Court, require that the claimed peripheral device send the "speed at which the peripheral device can transfer data" *after* address initialization.  However, the undisputed evidence showed that: (1) in USB 2.0 and 3.0 (the use of which IV alleged infringes claims 62 and 63), the host controller determines the speed of the peripheral device *before* address initialization (not *after* as required); (2) the speed at which the peripheral device communicates with the host device *never changes* after that initial determination; and (3) the speed at which the peripheral device communicates is *never* communicated to the host device

---

[2] On January 30, the Court granted IV JMOL of no invalidity of the asserted claims (claims 1 and 2) of the '431 patent based on U.S. Patent No. 5,566,371 to Ogawa. Ex. B, TT 1450:14-18. Also on January 30, the Court entered judgment of literal infringement of the asserted claim (claim 1) of the '270 patent.  D.I. 602.  Toshiba expects to appeal these judgments to the Federal Circuit once final judgment is entered and continues to reserve all rights to appeal as these issues.
[3] All exhibits cited are to the Declaration of Denise Kraft submitted in support of this motion.

2

after address initialization as required by the claims.  As a result, the Accused Toshiba Products cannot directly infringe.

Rather than show that data transfer speeds were sent as required by the claims, IV pointed the jury to the version number of the USB specification with which the peripheral device complies—found in a descriptor called "bcdUSB"—and another descriptor called "device_qualifier."  IV argued that these two pieces of information satisfy the "data transfer speed" claim limitation.  However, the version number of the USB specification is not the "speed at which the peripheral device can transfer data" as required by the Court's construction because it is undisputed that a version number is not itself a speed.  Moreover, although the claims as construed require the "speed" itself to be communicated—and not merely some information from which speed may be inferred—a Toshiba product that complies with USB 2.0 or 3.0 can transfer data at multiple different speeds, which means that the version number alone cannot even indirectly reflect the actual speed of that particular peripheral device.

The evidence also established that the device_qualifier does not include any information about the speed of the peripheral device, but rather identifies operational characteristics, such as packet size, that the device would have if it were to operate at other speeds.  Furthermore, IV failed to show that the device_qualifier actually is sent to the host computer after address initialization in the Accused Toshiba Products.  Indeed, IV failed to offer any evidence of that ever occurring in an Accused Toshiba Product in the United States, or that the host actually *infers* (or is even capable of inferring) speed based on a combination of the version number and the device_qualifier.

Second, IV failed to offer sufficient evidence that Toshiba had the knowledge and intent required to prove induced infringement.  The only evidence relied upon by IV to establish that Toshiba either actually knew that its customers infringed, or that Toshiba was willfully blind to such infringement, is the complaint that IV filed to begin this lawsuit, and even that complaint was not

3

put into evidence.  And even if it had been, the evidence at trial established that the complaint did not explain how or why Toshiba's customers allegedly infringed the patent (including IV's subsequent theory at trial that the use of USB 2.0 and 3.0 necessarily results in the practice of the claims), nor did IV's complaint even identify which of the sixty-three claims of the '742 patent allegedly were infringed.  Therefore, the complaint – which at most reflected IV's own belief that Toshiba infringed, rather than indicating anything about Toshiba's belief on the issue –could not have provided a sufficient evidentiary basis for the required finding that Toshiba actually knew that its customers infringed the patent, particularly in light of the evidence presented by Toshiba that its products do not send "data transfer speed' as required by the claims, that it did not believe that it infringed and that it explained to IV why it did not infringe.  Furthermore, although IV argued in the alternative that Toshiba was willfully blind to the alleged infringement of its customers, willful blindness requires a *deliberate* action by a defendant, which is entirely absent in this case.  Indeed, rather than taking a deliberate act to avoid learning of alleged infringement, the evidence established that Toshiba defended itself in this lawsuit on the ground that it did not infringe the patent, told IV that it did not infringe, and explained to IV why it did not infringe in detail.  As a result, JMOL of no induced infringement should be granted.

In the alternative, the Court should grant a new infringement trial.  A new trial is warranted because the jury's finding of induced infringement is against the clear weight of the evidence and a miscarriage of justice would result if the verdict were to stand.

Finally, under Federal Rules of Civil Procedure 50(c)(1) and 59, if the Court overturns the jury verdict of no infringement of the '819 patent, Toshiba moves conditionally for a new trial on the issue of invalidity of the '819 patent.  The Court struck the testimony of Toshiba's technical expert, Mr. Murphy, regarding the invalidity of the '819 patent and precluded Mr. Murphy from providing additional testimony.  IV's expert, Mr. McAlexander, testified that he was applying the

Court's claim construction in his analysis, and Mr. Murphy testified that he was applying the Court's claim construction as applied by Mr. McAlexander. Because Mr. Murphy was applying the Court's claim constructions to the claims, his testimony was proper, and it was error for the Court to strike and preclude his testimony. Toshiba was prejudiced by the Court's decision as it improperly removed the issue of invalidity of the '819 patent from the jury. As a result, Toshiba conditionally requests a new trial on '819 patent invalidity.

## IV.  STATEMENT OF FACTS

The relevant facts are addressed in the argument section below.

## V.  ARGUMENT

### A.  LEGAL STANDARDS

Judgment as a matter of law is appropriate if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for [a] party on [an] issue." Fed. R. Civ. P. 50(a); Fed. R. Civ. P. 50(b) ("If the court does not grant a motion for judgment as a matter of law made under Rule 50(a) . . . the movant may file a renewed motion for judgment as a matter of law"). To succeed on a renewed motion for judgment as a matter of law following a jury trial, the moving party "'must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusions implied [by] the jury's verdict cannot in law be supported by those findings.'" *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (quoting *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984)).

In determining whether a reasonable jury would have a legally sufficient evidentiary basis for the facts as found, the court presumes that "that the jury resolved all factual disputes in favor of the prevailing party, and . . . leave[s] those findings undisturbed as long as they are supported by substantial evidence." *Cordis Corp. v. Boston Sci. Corp.*, 658 F.3d 1347, 1357 (Fed. Cir. 2011). However, "[s]ubstantial evidence requires more than a mere scintilla" and the court "must review

5

the record as a whole, taking into consideration evidence that both justifies and detracts from the jury's decision." *Id.* (citing *Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc.*, 344 F.3d 1186, 1192 (Fed. Cir. 2003); *Johnson v. Campbell*, 332 F.3d 199, 204 (3d Cir. 2003)).  JMOL is appropriate when there is a purely legal basis required for reversal that does not depend on rejecting the jury's findings on the evidence at trial.  *MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1164 (Fed. Cir. 2015) (citing *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 211 (3d Cir. 2009)).

Under Federal Rule of Civil Procedure 59, the Court may grant a new trial on all or part of the issues in an action in which there has been a jury trial.  Fed. R. Civ. P. 59(a)(1)(A); *Asahi Glass Co. v. Guardian Indus. Corp.*, 886 F. Supp. 2d 369, 379 (D. Del. 2012).  "The decision to grant or deny a new trial is within the sound discretion of the trial court and unlike the standard for determining judgment as a matter of law, the court need not view the evidence in the light most favorable to the verdict winner."  *Intellectual Ventures I and II LLC v. Canon Inc.,* Case No. 11-cv-792-SLR, 104 F.Supp.3d 629, 637 (D. Del. 2015) (internal citations omitted).  A court should grant a new trial where the verdict is contrary to the weight of the evidence and a miscarriage of justice would result if the verdict were to stand, or where the court or counsel committed error.  *Id.*; *Brennan v. Norton*, 350 F. 3d 399, 430 (3d Cir. 2003) (citing *Williamson v. Consol. Rail. Corp.*, 926 F.2d 1344, 1352 (3d Cir. 1991)); *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F. 3d 1272, 1281-82 (Fed. Cir. 2000).

**B.     IV FAILED TO ADDUCE EVIDENCE SUFFICIENT TO SUPPORT A FINDING OF INFRINGEMENT OF THE '742 PATENT**

IV's infringement theory at trial relied entirely on its attempt to read the asserted claims of the '742 patent on the USB 2.0 and 3.0 standards.  Ex. A, TT 291:16-22; 311:20-312:4, 210:1-9.  IV did not perform any technical or forensic analysis of the Accused Toshiba Products to determine whether Toshiba's customers' use of the Accused Toshiba Products actually resulted in the practice of all of the steps of the claimed methods.  Ex. A, TT 348:21-349:6.  This is significant here, because where practicing a standard does not itself establish infringement, such a claim necessarily fails.

*Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327-29 (Fed. Cir. 2010).  Here, IV's infringement claim failed because the evidence established that practicing the USB 2.0 and 3.0 standards does not literally infringe claims 62 and 63, and certainly does not necessarily do so, and IV presented no substantial evidence to the contrary.

> **1.      The Accused Toshiba Products Do Not Practice The "Data Transfer Speed" Limitation Of Claims 62 And 63.**
>
> **a.      The Accused Toshiba Products do not send the "speed at which the peripheral device can transfer data"** *after* **address initialization.**

IV failed to offer substantial evidence that the Accused Toshiba Products practice the "data transfer speed" limitation of these claims as construed by the Court.  Ex. C, PX 4 ('742 patent); D.I. 277 at 17-18 (citing PX 4 at 50:43-53, 59:30-33); Ex. A, TT 287:3-8; 382:6-10; 385:17-386:5.  Claims 62 and 63 recite a specific configuration sequence for peripheral devices on a serial bus.  Ex. A, TT 218:16-219:18.  Specifically, both claims include the limitations of (1) "initializing a peripheral device address" and then (2) "performing a get peripheral identification sequence *after* said address initialization for a peripheral device . . . wherein information including the *data transfer speed* of the peripheral device is sent to a bus dispatch."  Ex. C, PX 4, 70:26-31, 37-42 (emphasis added).  Thus, claims 62 and 63 both require that the peripheral device send the "data transfer speed" to the bus dispatch of the host computer *after* the address initialization process.  Ex. A, TT 220:19-221:8; 386:6-18.

The Court construed "data transfer speed" to mean "speed at which the peripheral device can transfer data."  D.I. 277 at 17-18.  Toshiba's customers do not directly infringe claims 62 and 63 of the '742 patent because, in USB 2.0 and 3.0, the peripheral device does not send the data transfer speed to the host computer *after* the address initialization process as the asserted claims require.  Ex. A, TT 347:19-348:20; 386:6-387:15.  Rather, the peripheral device does the very opposite, that is, the data transfer speed is set by the device and the computer *before* the address initialization process and

the device does not send the data transfer speed to the computer after address initialization.[4]  Ex. A, TT 266:16-267:6; 386:6-387:15.  In this regard, IV's expert, Mr. Dezmelyk, admitted that in USB 2.0 and 3.0:

(1)    The data transfer speed is established between the peripheral device and the host computer during a process called the "reset sequence."  Ex. A, TT 347:19-25.  In both USB 2.0 and 3.0, the host determines during the "reset sequence" which speed (*i.e.*, Low Speed, Full Speed, and High Speed, and, in the case of USB 3.0, Super Speed) is being used by the peripheral device.  Ex. A, TT 229:1-230:3; *see also id.* TT 266:16-267:6; 347:19-348:20; 387:16-388:3; 390:10-391:12 (Dr. Stevenson's testimony describing speed determination at Low Speed); 391:13-392:22 (Full Speed); 392:23-393:18 (High Speed); 393:19-395:14 (Super Speed).

(2)    The reset sequence occurs *before* address initialization (in Mr. Dezmelyk's words "before the point in time where the address is set.").  Ex. A, TT 348:11-14.  For both USB 2.0 and 3.0, the address initialization occurs only *after* the peripheral device speed is determined during the reset sequence.  Ex. A, TT 277:18-278:16; Ex. D, PX 802 at 243 (discussing bus reset in step 3 and address initialization in step 5); *id.* at 153-54 (describing speed determination during bus reset); *see also* Ex. A, TT 395:23-396:4 (Dr. Stevenson's testimony that speed determination "happens before any address [is] initialized" in USB 2.0 and 3.0); Ex. E, PX 803 (USB 3.0 Specification) at Fig. 9-1.

(3)    After the speed is set during the reset sequence, the peripheral device continues to operate at that same speed and that speed never changes during normal operation.  Ex. A, TT 348:1-20.  Mr. Dezmelyk admitted that in both USB 2.0 and 3.0, the data transfer speed is never changed *after* address initialization.  Ex. A, TT 348:15 ("Q.  And after address initialization, the speed that -- that the device had previously been set at, it doesn't change; right?  A.  Right.  It doesn't change.

---

[4] In fact, the device does not even send the data transfer speed to the computer before address initialization, because in USB 2.0 and 3.0, the speed is set through a process that does not involve the device sending the speed to the computer.  Ex. A, TT 386:6-387:15.

That device remains operating at the same connection even though it may be possible of operating at other speeds."); 266:16-24; 276:6-22.  This admission was required because undisputed evidence at trial established that the speed does not change once it is set during the reset sequence.  *See* Ex. D, PX 802 (USB 2.0 Specification) at § 9.2.6.6; Ex. E, PX 803 (USB 3.0 Specification) at § 9.2.6.6 ("A device operates at a single speed after completing the reset sequence.  In particular, there is no speed switch during normal operations."); *see also* Ex. A, TT 403:3-404:20.

Moreover, as stated above, the evidence further established that, contrary to the express requirements of the claims, the data transfer speed never is sent by the peripheral device to the host computer *after* address initialization.  Ex. A, TT 386:6-18.  *See* § V.B.1.a.(1)-(3).

> **b.      The descriptors relied upon by IV neither identify nor even indirectly reflect the "data transfer speed" at which the peripheral device can transfer data.**

IV attempted to overcome the fact that data transfer speed is sent *before* address initialization in USB 2.0 and 3.0 by pointing the jury to two USB descriptors that its expert, Mr. Dezmelyk, claimed represented "data transfer speed."  Ex. A, TT 268:25-269:15; 275:18-276:1.  However, neither of these descriptors (independently or in combination) satisfies the data transfer speed limitation as construed by the Court.

First, the "bcdUSB" field cited by Mr. Dezmelyk merely represents the version number of the USB specification with which the peripheral device complies (*i.e.*, the "Specification Release Number," *e.g.*, USB 2.0 or 3.0), and is not the data transfer speed at which it operates, as required by the claims.  Ex. A, TT 406:2-407:22; 408:14-22 (Dr. Stevenson's testimony that the bcdUSB number represents a specification number, is not the data transfer speed and cannot be used to set speed).

Moreover, USB 2.0 and 3.0 devices operate at multiple speeds.  Therefore, even if a computer could recognize a range of possible speeds based on a USB version number, it still could not identify (even indirectly) the actual data transfer speed of the given peripheral device as required

by the claims.  Ex. A, TT 409:5-410:4 (Dr. Stevenson explaining that USB 2.0 and 3.0 devices each operate at multiple speeds); 421:21-422:15 (Dr. Stevenson's testimony that bcdUSB only provides a range of speeds, but does not identify a specific speed at which a particular device is operating).

Mr. Dezmelyk also identified the "device_qualifier," descriptor as speed information.  Ex. A, TT 271:15-276:1.  However, the "device_qualifier" descriptor does not convey speed, but rather operational characteristics, such as packet size, that the device would have if it were to operate at other speeds.  Ex. A, TT 412:6-413:11; 419:2-22; Ex. D, PX 802 at p. 264.  Notably, the "device_qualifier" field does not contain actual speed values.  *Id.*

> c.    **IV failed to show that the device_qualifier descriptor actually has been used as required by the claims during operation of the Accused Toshiba Products in the United States.**

IV argues that, in certain situations, one can infer speed from the combination of the bcdUSB and device_qualifier descriptors.  Ex. A, TT 271:23-276:1; 421:21-422:13; 502:3-8.  However, as Dr. Stevenson explained, the device_qualifier descriptor is sent only if the computer explicitly requests it, and the USB specifications do not *require* the computer to request it.  Ex. A, TT 416:13-417:25.  In other words, in USB 2.0 and 3.0, sending the device_qualifier is an optional feature.  *See* Ex. D, PX 802, § 9.2.6.6 at TOSH-IV0062619 ("These descriptors are not retrieved unless the host explicitly issues the corresponding GetDescriptor requests."); Ex. E, PX 803, § 9.2.6.6 at TOSH-IV0063345-46 (same).

This undisputed fact is critically important, because the presence of an optional feature in a standard cannot, without more, establish infringement by a product that complies with the mandatory features of the standard.  *Fujitsu*, 620 F.3d at 1327-28 ("[if] the relevant section of the standard is optional . . . it is not sufficient for the patent owner to establish infringement by arguing that the product admittedly practices the standard, therefore it infringes.  In these cases, the patent owner must compare the claims to the accused products or, if appropriate, prove that the accused

products implement any relevant optional sections of the standard.").  In this regard, IV failed to show the Accused Toshiba Products request these descriptors at *any* time during use of the products, let alone *after* the address initialization process.  Ex. A, TT 418:1-6 (Dr. Stevenson's testimony that Mr. Dezmelyk failed to present evidence that any Toshiba products actually request the "device_qualifier" descriptor), 421:9-19.

In addition, even assuming *arguendo* that it would be theoretically possible to use the combination of the bcdUSB and the device_qualifier to infer the "data transfer speed" of a peripheral device (which it is not), and further assuming *arguendo* that that the device_qualifier descriptor actually is sent in the Accused Toshiba Products (which IV never showed), IV failed to offer any proof that the computer/host actually makes an inference and uses the combination of the bcdUSB and device_qualifier descriptors to make such an inference.  Ex. A, TT 349:3-6 (confirming that Mr. Dezmelyk did not rely on any testing of Toshiba products).

Accordingly, IV failed to prove that the "data transfer speed" is determined *after* the address initialization process, as claims 62 and 63 require.

**2.    IV Failed To Prove Infringement By Toshiba Products Without USB Host Controllers.**

IV's expert, Mr. Dezmelyk, admitted that certain categories of the accused products – USB flash drives, disk drives, camcorders, keyboards and mice – lack USB host controllers.  Ex. A, TT 344:6-345:5.  These products do not and cannot practice the claimed methods of the '742 patent on their own.  *Id.*  Even if IV could somehow prove that these products directly infringe, IV did not and cannot establish the knowledge or intent required for indirect infringement as to all accused products (discussed in the next section), and, more specifically, IV did not and cannot establish knowledge or intent as to any accused products that lack USB host controllers.  The March 20, 2013 complaint that forms the alleged basis for Toshiba's alleged knowledge and intent only identified Toshiba products containing USB host controllers as accused products.  Ex. A, TT 296:17-298:6,

11

552:14-553:7.  Moreover, Mr. Dezmelyk's testimony at trial regarding products without USB host controllers was limited to conclusory statements.  *Id.,* TT 302:21-303:1; 303:22-304:10; 304:11-20; 306:9-15.  Accordingly, no reasonable jury could find that Toshiba products without a host controller infringe the '742 patent.

### 3.      IV Failed To Prove Direct Infringement By Customers.

IV did not establish that any Toshiba customer practiced "each and every step of the [claimed] method," and therefore failed to prove the requisite direct infringement.  *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Techs.*, 709 F.3d 1348, 1362 (Fed. Cir. 2013); *see also Fujitsu*, 620 F.3d at 1329.  Specifically, IV failed to identify any customer who actually performed the claimed methods – let alone a customer who performed the claimed methods in the United States, as required.  In this regard, if the accused products can be used at any given time in a non-infringing manner, then they do not necessarily infringe.  Where, as here, the claims are not drawn to mere capability, IV had to show "specific instances of direct infringement or that the accused device necessarily infringe[d] the patent in suit."  *Ball Aerosol and Specialty Container, Inc. v. Limited Brands, Inc.,* 555 F.3d 984, 994 (Fed. Cir. 2009) ("BASC concedes that it has no proof that the Travel Candle was ever placed in the infringing configuration, and it is clear that the Travel Candle does not necessarily have to be placed in the infringing configuration. We thus reverse the district court's finding of infringement. . ."); *Fujitsu*, 620 F.3d at 1329 ("[I]t is not enough to simply show that a product is capable of infringement; the patent owner must show evidence of specific instances of direct infringement.").  IV thus failed to offer the required evidence of direct infringement by Toshiba's customers.  Ex. A, TT 421:15-19.  Rather, IV simply relied on the bare conclusions of Mr. Dezmelyk, which are insufficient as a matter of law.  *Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1320 (Fed. Cir. 2006); *see also MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1177 (Fed. Cir. 2015).  Accordingly, no reasonable jury could find that Toshiba's customers directly infringed the '742 patent.

12

### 4.    IV Failed To Prove Toshiba Induced Infringement.

IV's induced infringement claim fails for at least two reasons.  First, as there can be no indirect infringement without direct infringement, IV's claim of induced infringement fails as a matter of law because, as explained above, there was no substantial evidence of direct infringement. *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("[i]ndirect infringement . . . can only arise in the presence of direct infringement."); *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006) ("the patentee always has the burden to show direct infringement for each instance of indirect infringement.").  But even if IV had presented substantial evidence that Toshiba's customers directly infringed the asserted claims (which it did not), IV failed to offer any substantial evidence that Toshiba had the requisite knowledge and intent for induced infringement (under either an actual knowledge or willful blindness theory).

### a.    The legal standard for actual knowledge and willful blindness.

A party "actively induces infringement of a patent" under 35 U.S.C § 271(b) if the party knows that the induced acts constitute infringement.  *Global-Tech*, 563 U.S. at 765-66.  A party can be held liable for induced infringement only if it actually knows of the infringement or if it is willfully blind to the infringement.  *Id.* at 765-66, 769.  In this regard, induced infringement requires both "knowledge that the induced acts constitute patent infringement" and "specific intent to encourage another's infringement."  *Id.* at 765-66; *i4i Ltd.*, 598 F.3d at 851.  The standard for knowledge is a high one, and is not satisfied by negligence, recklessness, or by showing that the accused infringer should have known of the infringement.  *Global-Tech*, 563 U.S. at 768-70; *DSU Med.*, 471 F.3d at 1306 (both "affirmative intent" and "evidence of culpable conduct" required).

In *Global-Tech*, the Supreme Court made clear that willful blindness requires "*active efforts* by an inducer to avoid knowing about the infringing nature of the activities" that "surpass[ ] recklessness and negligence."  563 U.S. at 769-770 (emphasis added) (finding that this standard was

13

met by the infringer's CEO and president failing to inform the lawyer from whom he sought a right-to-use opinion that the product to be evaluated had been copied directly from the patent holder's patented product).  Under this formulation, willful blindness requires that the accused infringer (1) "subjectively believe that there is a high probability that a fact exists" and (2) "take deliberate actions to avoid learning of that fact."  *Id.; see also Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1373 (Fed. Cir. 2015).  "[A] willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts."  *Global-Tech*, 563 U.S. at 770; *Canon*, 104 F. Supp. at 657.

Given the standard established by the Supreme Court in *Global-Tech*, the Federal Circuit's decisions regarding willful blindness have not surprisingly involved cases in which there was evidence of such deliberate actions.  For example, in *Suprema, Inc. v. Int'l Trade Com'n*, 626 Fed. Appx. 273, 2015 WL 5315371 (Fed. Cir. 2015), the Federal Circuit affirmed a finding of induced infringement based on willful blindness because, prior to the lawsuit, the accused infringer conducted "extensive market research" on the patentee's products and patents, including specifically studying a patent that had the same inventors as the patent-in-suit and that incorporated by reference the patent application that issued as the patent-in-suit.  *Id.*, 626 Fed. Appx. at 280-82, 2015 WL 5315371, at *5-7.

Likewise, in *Info-Hold*, the Federal Circuit vacated summary judgment of no induced infringement because, five years before filing the lawsuit, the patentee "repeatedly contacted" the accused infringer regarding the patent-in-suit and asked the accused infringer to investigate whether the patent applied to any of the accused products, after which the accused infringer "raised questions about the specific functionality alleged to be covered" by the patent in relation to the accused infringer's products and told the patentee it would "look into" whether its systems infringed the patent-in-suit, but there was no evidence it then did so.  *Info-Hold,* 783 F.3d at 1373.

14

Furthermore, in *Apeldyn Corp. v. AU Optronics Corp.*, Case No. 8-568-SLR, 831 F. Supp. 2d 817, 831, (D. Del. 2011), this Court granted summary judgment of no induced infringement where (1) there was no evidence that accused infringer had knowledge of the patent-in-suit prior to the filing of the lawsuit and (2) plaintiff's argument as to why defendant allegedly had willfully blinded itself was that (a) defendant held thousands of patents, (b) defendant had a large intellectual property division with ample resources to monitor patents, and (3) the defendant's 30(b)(6) witness testified the lawyers did not "collect patents issued to competitors unless requested to do so." *Id.* at 831. This Court concluded that the at best the defendant was "reckless or negligent," which fell short of the willful blindness standard as articulated in *Global-Tech. Id.*

>           **b.      IV failed to provide substantial evidence of Toshiba's
>                     actual knowledge of, or willful blindness to, its
>                     customers' alleged infringement.**

IV failed to offer any substantial evidence that Toshiba either knew that its acts would result in its customers infringing the '742 patent, or (under a willful blindness theory) believed there was a high probability that acts by its customers infringed and took *deliberate steps* to avoid learning of that infringement. *Global-Tech*, 563 U.S. at 769. In this regard, it is undisputed that Toshiba was not even aware of the existence of the '742 patent until it received a letter from IV the day before IV filed this lawsuit. Ex. A, TT 552:14-18. Indeed, the sole evidence offered by IV to establish the requisite knowledge of infringement was the complaint in this action. *See* Ex. A, TT 319:14-320:23 (Mr. Dezmelyk testifying: "The only thing I'm relying on to establish that Intellectual Ventures told Toshiba that it infringed the '742 patent was the complaint.") In this regard, in IV's closing argument to the jury, when attempting to match the evidence at trial to the elements of induced infringement in the Court's jury instructions, IV's counsel argued:

> Toshiba knew the acts, if taken, would result in the customers infringing the
> '742 patent. So what does that mean? If the acts, meaning the plugging in
> part, would result -- if Toshiba knew that doing that would result in
> infringement, in other words, they knew about infringement, okay, then we

15

satisfied this third element, if Toshiba knew.

Now, how does that work?  Well, **we told Toshiba they infringed. All right. So they knew that**.  All right.  If I tell you that, say, you know, we're sitting here, there are no windows in this room.  If I tell you it's a bright sunny day, you would know that. Now, you could figure out if I was right or wrong by going outside and checking it for yourself, but you know at least by me telling you to begin with. That's the know part.

Ex. A, TT 635:9-23 (emphasis added).

The only evidence IV offered that IV "told" Toshiba that it infringed was the testimony it offered about the complaint, which was not offered into evidence.  Ex. A, TT 319:14-320:23.  The testimony that the jury heard about the complaint was that it: (1) did not allege which of the 63 claims of the '742 patent Toshiba allegedly infringed; and (2) did not state or explain how the '742 patent claims were infringed.  *See id.*, TT 553:20-554:2.  In salient part, the complaint merely stated:

Toshiba has infringed, and continues to induce infringement of one or more claims of the '742 patent . . . Toshiba actively, knowingly and intentionally induced and continues to actively, knowingly and intentionally induce infringement of the '742 patent by selling or otherwise supplying products with USB host controllers with the knowledge and intent that third parties will use in the United States the products with USB host controllers supplied by Toshiba for their intended purpose.

Ex. A, TT 296:17-297:16 (Mr. Dezmelyk's testimony concerning the content of the complaint); *see also id.,* TT 318:18-320:23 (Mr. Dezmelyk's testimony relying on the complaint as evidence that IV told Toshiba that it infringed the '742 patent).  Importantly, while the complaint identified "products with USB host controllers," it did not allege or even suggest that compliance with the USB 2.0 or 3.0 specification (or *any* USB specification) established infringement.  *Id.,* TT 297:3-16.  Accordingly, the testimony about the complaint does not provide any substantial basis on which the jury could have properly concluded that Toshiba actually knew that it was infringing the '742 patent.  "A complex patent can contain many pages of claims and limitations. A patent holder is in a better position than an alleged infringer to know, and to be able to point out, just where, how, and why a product (or process) infringes a claim of that patent."  *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S.Ct.

843, 850 (2014).

Indeed, **IV's** complaint at most evidences what **IV** believed, and not at all what Toshiba believed. In this regard, if the filing of a patent infringement complaint were sufficient to establish the requisite knowledge of infringement, then the knowledge of infringement requirement would be satisfied in every case, which is not the law. "[The patentee argues that] even if the defendant reads the patent's claims differently from the plaintiff, and that reading is reasonable, he would still be liable because he knew the acts might infringe. *Global-Tech* requires more. **It requires proof the defendant *knew* the acts were infringing**. And the Court's opinion was clear in rejecting any lesser mental state as the standard." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S.Ct. 1920, 1928 (emphasis added). IV's assertion that Toshiba had the requisite knowledge and intent therefore fails as a matter of law as lacking any substantial evidentiary support. IV's assertion also flies in the face of the evidence that Toshiba presented to the jury that it disputed IV's infringement claims, that it explained to IV why it did not infringe, and that it never believed that it infringed, as well as the evidence that Toshiba products do not send data transfer speed as required by the claims. Ex. A, TT 559:10-23; 382:6-424:20; 535:10-546:3.

IV's claim that Toshiba was willfully blind to infringement also fails as a matter of law. In order to be held liable for inducement under a willful blindness theory, Toshiba had to (1) "subjectively believe of the high probability that a fact exists," and (2) "take deliberate actions to avoid learning of that fact." *Global-Tech*, 563 U.S. at 769. As an initial matter, there is *no evidence* of any deliberate effort by Toshiba to avoid knowing about "the infringing nature of the activities," much less any such activities that "surpass[ ] recklessness and negligence." *Id.* at 768-70. Rather, unlike the claims against the accused infringers in *Global-Tech*, *Suprema*, *Info-Hold* and *Apeldyn*, IV did not argue at trial that Toshiba was willfully blind to the '742 patent (or to any allegedly infringing activity) *prior* to the filing of the complaint. Notably, Toshiba has found no case finding that a

17

defendant was willfully blind to infringement and liable for induced infringement when there was no pre-suit notice of infringement.

Here, IV claims that Toshiba's purported willful blindness began at an unspecified time *after* the service of the March 20, 2013 complaint, after which time Toshiba consistently defended itself in this lawsuit on the ground that it did not infringe the patent. In an attempt to stitch together a willful blindness argument in the face of this fact, IV pointed the jury to the testimony of Toshiba's expert, Dr. Stevenson, regarding his non-infringement positions. Ex. A, TT 636:17-23 ("So if they blinded themselves, they don't want to hear it, they don't want to see it, all right, the infringement, then they meet that test. That is exactly what has gone on in this case. Let me show you why. Remember, we talked about the two defenses that Dr. Stevenson had, the two reasons why he think [sic] there's not infringement.") But in acknowledging Toshiba's non-infringement positions, IV acknowledged that Toshiba was, in fact, *not* willfully blind. Simply put, Toshiba could not possibly have (1) "subjectively believe[d] that there is a high probability that" its customers had infringed the patent and then (2) "take[n] deliberate actions to avoid learning of that fact" when Toshiba had instead specifically addressed IV's infringement theory, explained to IV in detail why it believed it did not infringe and then presented a detailed non-infringement defense at trial. *Global-Tech*, 563 U.S. at 769; Ex. A, TT 559:10-23; 382:6-424:20, 535:10-546:3. Thus, far from there being any evidence that Toshiba was being willfully blind to IV's infringement claims, the evidence establishes, beyond any dispute, that Toshiba was fighting those allegations directly with its eyes wide open. IV's willful blindness claim therefore fails as a matter of law as lacking any substantial evidentiary support and, in fact, as being contrary to the undisputed evidence.

Entirely ignoring Toshiba's and Dr. Stevenson's affirmative showing at trial (addressed in Section V.B.1.a and b above) that peripheral products that comply with USB 2.0 and 3.0 do not communicate "data transfer speed" after address initialization, IV's counsel argued to the jury that

Toshiba was willfully blind because Dr. Stevenson did not test the Accused Toshiba Products to determine whether a device_qualifier descriptor is actually sent.  Ex. A, TT 638:22-639:1.  However, Dr. Stevenson already had established that USB 2.0 and 3.0 do not practice the claims, and his testimony on this point was simply that IV and its expert, Mr Dezmelyk—who bore the burden of proof on this infringement issue—had themselves failed to offer any evidence that they tested the Toshiba products to determine whether the device_qualifier descriptor is actually sent in the Toshiba devices.  Ex. A, TT 418:1-6, 421:9-19.  It cannot be willful blindness for a defendant's expert to not perform a test that the plaintiff and its expert did not perform to establish infringement.  *See* Section V.B.1.c, *supra.*

IV's counsel also argued to the jury that Toshiba was willfully blind because Dr. Stevenson did not talk to engineers regarding its USB products.  Ex. A, TT 639:13-15.  However, this argument rings entirely hollow as Dr. Stevenson, like Mr. Dezmelyk, rested his affirmative showing on why USB 2.0 and 3.0 do not practice the asserted claims based on the USB 2.0 and 3.0 standards, which did not require any discussion with any Toshiba engineer.  In this regard, Mr. Dezmelyk did not rely at trial on any Toshiba engineer testimony regarding how USB 2.0 and 3.0 are implemented in the Accused Toshiba Products.  And the specific point on which IV's counsel was attempting to fault Dr. Stevenson was that he did not ask Toshiba engineers whether the device_qualifier descriptor was sent (Ex. A, TT 638:9-11), which also was a question that IV's counsel never asked any Toshiba witness at trial even though IV bore the burden of proof on that issue.

Finally, IV's counsel argued to the jury that Toshiba was "sticking [its] head in the sand" because Ms. Shimogawara did not disclose to the jury what Toshiba's lawyers communicated to her regarding the '742 patent and did not answer a question at deposition about whether Toshiba obtained an opinion of counsel (a question she was instructed not to answer so as to not waive attorney-client privilege).  Ex. A, TT 642:14-643:17.  These arguments are directly contrary to the

19

law: "The failure of an infringer *to obtain* the advice of counsel with respect to any allegedly infringed patent, *or* the failure of the infringer *to present such advice to the court or jury may not **be used to prove*** that the accused infringer willfully infringed the patent or *that the infringer intended to induce infringement of the patent*."[5]  35 U.S.C. § 298 (emphasis added).  As a result, IV's counsel's arguments suggesting that Toshiba should have obtained an opinion of counsel and that Toshiba should have waived privilege to reveal what its lawyers communicated to it were improper and cannot constitute evidence of an intent to induce.

Moreover, in addition to the fact that IV failed to establish either actual knowledge of infringement or willful blindness, a defendant's reasonable belief in non-infringement also can itself defeat an inducement claim by showing lack of intent.  *Ecolab, Inc. v. FMC Corp.,* 569 F.3d 1335, 1351 (Fed. Cir. 2009), *amended on reh'g in part on other grounds*, 366 Fed. Appx. 154 (Fed. Cir. 2009); *see also Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1364 (Fed. Cir. 2016); *Vehicle IP, LLC v. AT & T Mobility LLC*, Case No. 09–1007–LPS, 2016 WL 7647522, at *7 (D. Del. Dec. 30, 2016).  Here, Toshiba offered undisputed evidence at trial that, after receiving the complaint, Toshiba told IV that it did not infringe and provided IV with a detailed explanation as to why it did not believe it infringed the '742 patent.  Ex. A, TT 559:10-17.  And, at trial, Toshiba offered detailed evidence as to why its products do not send "data transfer speed" as required by the claims.  *Id.*, TT 559:10-23; 382:6-424:20; 535:10-546:3.  Moreover, Ms. Shimogawara also testified that Toshiba did not believe, and has never believed, that it infringed the '742 patent.  *Id.*, TT 559:18-23.  IV offered no contrary

---

[5] Section 298 applies to any lawsuit commenced on or after January 14, 2013, and the issue date of the asserted patent is irrelevant.  Leahy Smith American Invents Technical Corrections, Pub.L. No. 112–274, 126 Stat. 2456 (2013) at § 1(a) ("Advice Of Counsel.—Notwithstanding section 35 of the Leahy–Smith America Invents Act (35 U.S.C. 1 note), section 298 of title 35, United States Code, shall apply to any civil action commenced on or after the date of the enactment of this Act."); § 1(n) ("Effective Date—Except as otherwise provided in this Act, the amendments made by this Act shall take effect on [January 14, 2013], and shall apply to proceedings commenced on or after such date of enactment.").

evidence.  Thus, Toshiba's good faith belief in non-infringement is a further reason why JMOL of non-infringement is warranted.

### 5.    IV Failed To Prove Toshiba Corp. Engaged In Infringement.

No reasonable jury could conclude that Toshiba Corp. engaged in any alleged acts of infringement of the '742 patent.  IV failed to prove that Toshiba Corp. induced infringement by customers.  IV also failed to prove that Toshiba Corp. may be held jointly liable for any allegedly infringing acts by TAIS.  To establish infringement by Toshiba Corp. based on acts by TAIS, IV was required to prove that: (1) Toshiba Corp. directed or controlled TAIS's performance of the allegedly infringing acts; (2) Toshiba Corp. and TAIS formed a joint enterprise; or (3) Toshiba Corp. conditioned participation in an activity or receipt of a benefit upon TAIS's performance of a step or steps of a patented method, and established the manner or timing of that performance.  *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022-23 (Fed. Cir. 2015); *Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1364 (Fed. Cir. 2001); *Centillion Data Sys., LLC v. Quest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011).  IV did not prove the existence of any such arrangement between Toshiba Corp. and TAIS.  Moreover, there is no evidence that Toshiba Corp. engaged in any infringing act in the United States.  Accordingly, this Court should find as a matter of law that Toshiba Corp. does not infringe the '742 patent.

### C.    IN THE ALTERNATIVE, TOSHIBA SHOULD BE GRANTED A NEW TRIAL REGARDING INFRINGEMENT OF THE '742 PATENT

If the Court does not grant JMOL of non-infringement, the Court should alternatively grant a new trial regarding infringement of the '742 patent on two grounds.  As to the first ground, as explained in Section V.B, the jury's finding of induced infringement is against the clear weight of evidence as there was insufficient evidence to show that (1) Toshiba's customers directly infringed, and (2) Toshiba knew of and intended to encourage its customers' alleged infringement.  Given this lack of evidence, a miscarriage of justice would result if the verdict were to stand.  *Brennan*, 350 F. 3d

21

at 430 (citing *Williamson*, 926 F.2d at 1352); *Advanced Display Sys.,* 212 F. 3d at 1281-82.  The Court should conclude, at least under the less rigorous standard for grant of a new trial where the Court is not required to view the evidence in the light most favorable to the winner, that the jury's verdict of infringement of the '742 patent is against the weight of the evidence, and grant a new trial.

As to the second ground, the jury was given an instruction on "willful blindness" that was erroneous and that instruction was not harmless.[6]  The Court instructed the jury that "Toshiba induces patent infringement if it knows of, *or is willfully blind to,* an asserted claim and purposely causes, urges or encourages another to infringe, or *was willfully blind to the fact that the induced acts constituted patent infringe[ment]*" ((Ex. A, TT 730:3-7) (emphasis added)) and that "Toshiba believed there was a high probability that the acts by its customers infringed the '742 patent and took deliberate steps to avoid learning of that infringement."  Ex. A, TT 730:20-23.  These instructions as to willful blindness were erroneous because, as established above in Section V.B.4.b. above, there was no evidence in the record to provide a basis for an instruction on willful blindness.  Given the absence of any evidence concerning willful blindness, the Court's instruction was contrary to law. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1234 (Fed. Cir. 2014) ("a court should not instruct on a proposition of law about which there is no competent evidence") (quoting *Nestier Corp. v. Menasha Corp.-Lewisystems Div.*, 739 F.2d 1576, 1579-80 (Fed. Cir. 1984)).

By suggesting that the jury was permitted to rely on the doctrine of willful blindness – notwithstanding IV's failure to provide any evidence of any active efforts or deliberate actions upon which to base such reliance – the instruction at issue confused and misled the jury, and resulted in a verdict against the clear weight of evidence.  When jury instructions mislead the jury, a new trial is appropriate. *CEATS, Inc. v. Continental Airlines,* 526 Fed. Appx. 966, 2013 WL 1776814, at *6 (Fed.

---

[6] Toshiba raised its objections to the inclusion of this jury instruction both in its Court submissions and at the charge conference. *See* D.I. 627 ([Proposed] Instructions) at 23-26; Ex. A, TT 433:8-435:4. Willful blindness was not part of the instruction in the trial on the '270, '431 and '819 patents.

Cir. 2013) (internal citations and quotations omitted).  In this regard, the harm caused by the erroneous jury instruction was compounded by IV's counsel's statements at trial suggesting that the jury could supplant the lack of evidence with a finding of "willful blindness."  *See* Section V.B.4.b., *supra*; *Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1331 (Fed. Cir. 2010) ("In reviewing jury instructions, the full trial record and the jury instructions in their entirety must be examined because instructions take on meaning from the context of what happened at trial, including how the parties tried the case and their arguments to the jury.") (internal quotations omitted).  Although "remarks of counsel [are] required to be confined to the evidence admitted in the case and reasonable inferences drawn therefrom," *Ayoub v. Spencer*, 550 F.2d 164, 170 (3d Cir. 1977), IV's counsel repeatedly and improperly referred to willful blindness in his closing arguments.  *See e.g.,* Ex. A, TT 636:9-20, 638:9-639:1, 639:13-15, 640:15-643:17.

Because IV failed to adduce any evidence by which a reasonable jury could find that Toshiba induced infringement of the '742 patent, it is more probable than not that the erroneous jury instruction concerning willful blindness – and counsel for IV's reliance on this instruction throughout his closing argument – confused and misled the jury, and resulted in a verdict against the clear weight of evidence.  As a result, a new trial on infringement is appropriate.

**D.    TOSHIBA REQUESTS A NEW TRIAL ON THE '819 PATENT IF THE JURY VERDICT OF NON-INFRINGEMENT IS OVERTURNED**

In the event that the Court overturns the jury's verdict that Toshiba did not induce or contribute to the infringement of asserted claims 17 and 19 of the '819 patent (which it should not, as substantial evidence supports that verdict), pursuant to Rules 50(c)(1) and 59, Toshiba conditionally requests a new trial on the issue of invalidity of the asserted claims in light of the Toshiba TC5816 prior art product.  *Medisim Ltd. v. BestMed, LLC,* 758 F.3d 1352, 1359-60 (Fed. Cir. 2014) (the district court's conditional grant of new trial under Rule 50(c)(1) on anticipation was not

an abuse of discretion).  Toshiba's contingent request for a new trial on the invalidity of the '819 patent is based on the Court's improper striking and preclusion of the testimony of Toshiba's invalidity expert for the '819 patent, Robert Murphy.

On September 8, 2015, Toshiba asserted declaratory judgment counterclaims of invalidity of claims 17 and 19 of the '819 patent.  D.I. 197, 198.  At trial on January 25, 2017, Mr. Murphy provided initial testimony regarding the invalidity of the '819 patent, stating his conclusion that the '819 patent was invalid, noting the Court's claim constructions for the '819 patent and testifying that he had "to live within those descriptions for those claim terms in [his] analysis" and he "appl[ied] them faithfully."  Ex. B, TT 1300:20-1301:19.  IV's technical expert with respect to the '819 patent, Mr. McAlexander, similarly testified that he was applying the Court's claim constructions in his analysis.  *See, e.g.,* Ex. B, TT 419:1-12.  Mr. Murphy then explained that he was applying Mr. McAlexander's analysis to the prior art in the same way that Mr. McAlexander applied the claim analysis to the Toshiba Accused Products.  Ex. B, TT 1302:15-22.  IV then moved to strike Mr. Murphy's testimony and preclude Mr. Murphy from providing further testimony because contrary to Mr. Murphy's testimony, IV claimed "the only opinion [Mr. Murphy] has is based on something other than [the Court's] claim construction."  Ex. B, TT 1307:2-7.  Before Mr. Murphy testified further, the Court requested briefing on the issue, and Toshiba represented in that briefing that Mr. Murphy would "during his upcoming testimony, perform a limitation-by-limitation comparison of the asserted claims and the TC5816 prior art under the Court's claim construction as applied by Mr. McAlexander."  D.I. 591 at 1.

On January 26, 2017, the Court struck Mr. Murphy's testimony and precluded Mr. Murphy from providing further testimony.  Ex. B, TT 1317:23-1318:15, 1320:6-15.  The Court's ruling prejudiced Toshiba by not permitting Toshiba to introduce evidence as to how the Toshiba TC5816 prior art product practiced the claimed invention, thus invalidating the patent.  Specifically, if the

24

Court were to find direct infringement in the Toshiba accused products, the same elements in those products are found in Toshiba's TC5816 prior art product. *Amazon.com, Inc. v. BarnesAndNoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) (claims are "interpreted and . . . given the same meaning for purposes of both validity and infringement analysis"); *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1320 (Fed.Cir.2009) ("invalid claim[s] cannot give rise to liability for infringement").

The Court relied on *TiVo Inc. v. EchoStar Comm.*, 516 F.3d 1290 (Fed. Cir. 2008) to exclude Mr. Murphy's testimony. *See id.* at 1311 (finding no abuse of discretion where the court permitted defendant's expert to testify about prior art while prohibiting the expert only from "testifying about how the prior art related to '[plaintiff's expert's] view of the claims.'"). At a minimum, under *TiVo,* Mr. Murphy should have been able to testify about the prior art, which he was not permitted to do, constituting prejudice to Toshiba. Furthermore, in *TiVo*, it was unclear whether the plaintiff's expert was applying the court's claim construction. Here, Mr. McAlexander testified that he was applying the Court's claim construction, and Mr. Murphy testified that he was applying the Court's claim construction as applied by Mr. McAlexander. Because Mr. Murphy was applying the Court's claim constructions to the claims, his testimony was proper, and it was error for the Court to strike and preclude his testimony. As a result, should the Court disturb the non-infringement verdict, a new trial should be granted to permit Mr. Murphy the opportunity to provide testimony as to the invalidity of the '819 patent.

## VI.    CONCLUSION

For the foregoing reasons, Toshiba respectfully requests the Court grant this motion.

Dated:  March 13, 2017


**Of Counsel***:*

Mark D. Fowler (*Pro Hac Vice*)
Carrie L. Williamson (*Pro Hac Vice*)
Brent Yamashita (*Pro Hac Vice*)
Saori Kaji (*Pro Hac Vice*)
Lauren J. Tsuji (*Pro Hac Vice*)
**DLA PIPER LLP (US)**
2000 University Avenue
East Palo Alto, CA  94303-2215
Telephone:    (650) 833-2048
Facsimile:      (650) 687-1138
mark.fowler@dlapiper.com
carrie.williamson@dlapiper.com
brent.yamashita@dlapiper.com
saori.kaji@dlapiper.com
lauren.tsuji@dlapiper.com


Gerald T. Sekimura (Pro Hac Vice)
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA  94105-2933
Telephone:    (415) 836.2576
Facsimile:      (415) 659.7476
gerald.sekimura@dlapiper.com


Patrick Park (Pro Hac Vice)
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA  90067-4704
Telephone:    (310) 595.3113
Facsimile:      (310) 595.3413
patrick.park@dlapiper.com

**DLA PIPER LLP (US)**

  */s/ Denise S. Kraft*
Denise S. Kraft (DE Bar No. 2778)
Brian A. Biggs (DE Bar No. 5591)
1201 North Market Street, Suite 2100
Wilmington, DE  19801-3046
Telephone:    (302) 468-5700
Facsimile:      (302) 394-2341
denise.kraft@dlapiper.com
brian.biggs@dlapiper.com

*Attorneys for Defendants Toshiba Corporation, Toshiba America, Inc., Toshiba America Electronic Components, Inc. and Toshiba America Information Systems, Inc.*

26